## Case No. 14,687.

### UNITED STATES ex rel. LEARNED v. BURLINGTON.

[2 Am. Law Reg. (N. S.) 394.]

Circuit Court, D. Iowa. Jan. Term, 1863.[1]

MANDAMUS—MUNICIPAL CORPORATION—TAX LIMIT—JUDGMENT CREDITOR.

1. The federal courts have jurisdiction and power to issue the writ of mandamus to a municipal corporation to compel it to perform its duty, although such duty is created and enjoined by state law alone.

2. An agreement to levy a special tax cannot be implied from an ordinance making it the duty of the city council "to provide means to meet the payment" of a designated debt when the same may become due.

3. A city council has no power to levy taxes not expressly authorized by its charter or the law. Hence, where by the charter of a city it is provided that no greater tax than one per centum shall be levied for any one year, and this maximum rate is actually levied, a mandamus will be refused even to a judgment-creditor to compel the city to levy a greater tax, or even to levy a specific tax to pay his judgment.

[Cited in Britton v. Platte City, Case No. 1,907.]

At law.

MILLER, Circuit Justice. The plaintiff, having recovered against the city of Burlington a judgment in the district court of the United States for the state of Iowa, and having issued execution which was returned nulla bona, applied to that court for a writ of mandamus, requiring the mayor and aldermen of said city to levy a special tax for the payment of said judgment. The cause being of that class which, by the act creating this court, is transferred into it, the application is now made here for the peremptory writ.

The defendants, who have been served with notice, make answer under oath, to the information, and set up, substantially, the following reasons why the writ should not be granted: 1st. That the courts of the federal government have no jurisdiction to issue a writ of mandamus to persons whose functions are created by state law, such officers being responsible alone to state authority, so far as this writ is concerned. 2d. That there is nothing in the ordinance or contract, by which the debt was created, which requires that any specific tax shall be levied

for the payment of this debt. 3d. That by the charter of the city of Burlington, no greater tax than one per cent. per annum can be levied on the taxable property of the city, and that the authorities have levied a tax of that amount for the present year.

The plaintiff objects, by way of demurrer, to the sufficiency of the matters thus set up in the answer, which may be treated as standing in the place of a return to an alternative writ.

1. If there were any doubt as to the power of the federal courts to use the writ of mandamus in cases of this character, the question is settled in favor of the existence of that power by the case of Commissioners of Knox Co. v. Aspinwall, 24 How. [65 U. S.] 376. The first objection is therefore untenable.

2. In reply to the second objection it is claimed by plaintiff that in the ordinance for borrowing the money, under which the debt was contracted, on which the judgment was rendered, there is a provision for levying a specific tax for the payment of the debt and interest. The language of the ordinance on this subject is as follows: "Be is further enacted, that it shall be the duty of the city council of said city to provide means to meet the payment of said bonds and coupons, when the same may become due, according to the contract entered into for said loan and to pay the same." Does this language imply an agreement to levy a special tax separate from other taxes or other resources of the city, for the payment of this debt? Or does it imply that out of the various resources of the city, its general annual tax, its wharfage, its licenses, or its power to borrow money, some means will be provided by the city authorities for that purpose? The latter seems to be the more reasonable construction of the ordinance. The plaintiff, however, urges that by sections 1895–1897, Code (Revision 1860, § 3274 et seq.), it is made the duty of the mayor and aldermen of the city to levy a tax for the special purpose of paying this debt, and to see that it is collected and appropriated to that purpose, and that this duty should be enforced by mandamus. These sections do provide that in cases where judgment has been recovered against a city or any other civil corporation, and no property is found on which to levy execution, that "a tax must be levied as early as practicable, sufficient to pay off the judgment with interest and costs."[1] The case of State v. Judge of

[1] These sections of the statute law are as follows: Section 3274 (1895): "Public buildings owned by the state, or any county, city, school district, or other civil corporation, or any other public property necessary and proper for carrying out the general purpose of the corporation, are exempt from execution. The property of a private citizen can in no case be levied upon to pay the debt of a civil corporation." Section 3275 (1896): "In case no property is found on which to levy, which is not exempted by the last section, or if the judgment-creditor elect not to issue execu-

[1] [Reversed in 154 U. S. 568, 14 Sup. Ct. 1212.]

Floyd Co., 5 Iowa, 380, seems to intimate pretty strongly that in such a case if the tax was not levied, a sufficient remedy is provided by section 1897 in the personal responsibility of the officers who should refuse to make the levy. From the view taken of the present case by the court, it is not necessary to decide this point.

3. If it is true, as claimed by defendant, that the mayor and aldermen of Burlington have no legal authority to levy any tax on property liable to taxation, exceeding one per cent. per annum, and that they have levied a tax of that amount for the present year, it is clear that this court cannot compel them to levy any additional tax. The only statutory provisions on that point, brought to the attention of the court, or which it has been able to find, are the 1st section of the act of February 22d, 1847, [Laws 1846-47, p. 91], to amend the charter of the city of Burlington, and the 1st section of the act of January 22d, 1853, to amend said charter. By the act first mentioned, it is declared "that the amount of tax to be levied upon real and personal estate by the mayor and aldermen of the city of Burlington, after the taking effect of this act, shall not exceed 12½ cents on every one hundred dollars' worth of property to be assessed." This is one-eighth of one per cent. The act of 1853 says, "That to defray the current expenses of said city, the city council shall have power to levy and collect taxes on all the real and personal property in said city, not exempted by general law from taxation: provided, that the amount of taxes levied for said purpose shall not in any one year exceed one dollar on each one hundred dollars' worth of property taxed."

The result of these two sections considered alone would seem to be that except for the purpose of defraying the current expenses of the city, the tax cannot exceed one-eighth of one per cent., and cannot, for any or all purposes, exceed one per cent. Do the provisions of sections 1895, 1896, and 1897 of the Code repeal the above sections of the city charter, or do they override them when brought into question together, or is there any necessary conflict between them? There is certainly no express repeal, and the Code could not be intended by implication to repeal the section last quoted, for it was passed since the Code became the law of the land. The rule also is well understood, that a repeal by implication can only arise when that is the necessary inference from the impossibility that both the acts, supposed to be in conflict, can stand. If either act is to

override the other, or repeal the other, certainly the later expression of the legislative will must stand in preference to the former. But in the present case, there is no such necessary conflict. The provision of the Code can have its effect by compelling the city council to levy the tax so far as it has power to levy it. The provisions of the charter can stand as they were intended, as a useful and just limitation of that power. The previous year to this the city council of Burlington, as appears by the answer in this case, only levied a tax of one-half per cent. Undoubtedly if this was found to be inadequate to meet the current expenses, and to provide a fund to meet the judgment, it was the duty of the council under section 1897 of the Code, to so increase the tax, inside of one per cent., as to raise that fund if it could be so done. This they aver they have now done to the full extent of their authority, and this court will not order them to exceed it. That this is a sound view of the intention of the framers of the Code is strongly to be inferred, from some of its provisions on the subject of town and city corporations. Chapter 42 is devoted to providing the manner in which the citizens of a village or town may organize themselves into a corporation, and may either assume the privileges and responsibilities of towns or cities according to the number of the population. In speaking of a town charter thus adopted, it says, section 665, that it may give powers to establish by-laws, ordinances, &c., and "to levy and collect taxes on all property within the limits of such corporation which by the laws of the state is not for all purposes exempt from taxation, which tax must not exceed one per cent. per annum on the assessed value thereof," and section 669 says that "the preceding provisions are applicable to a town desiring to become organized as a city." Now these are the very corporations mentioned in sections 1895 to 1897, inclusive, of which it is said that a tax must be levied to pay a judgment recovered against them. Was it meant that they should absolutely, at once, levy a tax sufficient to pay the debt without regard to the one per cent. limitation in the previous sections? Or was it meant that they should use such taxing power as they had for that purpose, and no more? If the former is the sound construction, then the limit upon the taxing power is nugatory, and it makes no difference how strongly the legislature, or the charter adopted by the people, may forbid excessive taxation, the authorities of the city may, by resorting to the power to make contracts, impose upon the property-holders a tax unlimited in amount or duration. The wisdom of that provision in the Code, and in the charter of the city of Burlington, has been amply vindicated by events occurring since their enactment, and they should not be lightly set aside.

As it appears then to the court that the

---

tion against such corporation, he is entitled to the amount of his judgment and costs in the ordinary evidences of indebtedness issued by that corporation. And if the debtor corporation issues no scrip or evidence of debt, a tax must be levied as early as possible." Section 3276 (1897): "A failure on the part of officers of the corporation to comply with the requirement of the last section, renders them personally liable for the debt."

city authorities have already levied for the present year, a tax as large as the law permits, no writ of mandamus can rightfully issue to compel them to levy more. The demurrer of plaintiff being to the whole answer, is overruled, and the application for a writ of mandamus is refused.

[Reversed by the supreme court. 154 U. S. 568, 14 Sup. Ct. 1212.]

NOTE. The importance of the questions discussed and decided by Mr. Justice Miller in the foregoing opinion, will more fully appear when it is considered that the charters of most of the Western, if not Eastern cities, contain limitations on the power of taxation similar to those contained in the charter of the city of Burlington, and when it is further considered that many of these cities, in the flush and prosperous times preceding 1857, contracted heavy debts by way of subscriptions to the stock of railway companies, for internal improvements, and for other purposes. Its practical importance, therefore, as well as the high position and ability of the judge who delivered the opinion, well justifies its publication.

The case is suggestive of a few thoughts which we will briefly present. We have given in a note the sections of the Code to which the opinion refers, in order that the reader might have a clear view of all the statute law bearing on the subject.

I. The first remark we make is, that there is nothing in the opinion which favors the idea that cities will be allowed to evade the performance of their legal obligations to their creditors. If the organic law of a municipal corporation contains no limitation on the rate of taxation, there is nothing in the judgment under consideration which denies the right of a judgment-creditor to a specific or other sufficient tax immediately to pay his debt. In the absence of such limitation on the taxing power, then, if the creditor has been prudent enough to stipulate for the levy of a specific tax, it cannot be doubted that his rights would, if necessary, be enforced against the delinquent tribunal or debtor by mandamus. And where, as in the principal case, there is a limitation, it is very plainly intimated, and doubtless would have been so decided if the case had called for it, that the debtor corporation would, if necessary to pay the judgment, be compelled to levy the maximum rate authorized by its charter. These observations may be extended to and applied, mutatis mutandis, to counties and other civil corporations.

II. In regard to the decision of the main point involved, no reason is seen to question its correctness. The creditor had not stipulated for the levy of a special tax to pay his debt. The charter of the city contained, at the time the debt was created, an express provision, "the wisdom of which," according to Mr. Justice Miller, "has been amply vindicated" by experience, limiting the taxing power. The object of this provision is obvious—to secure the citizen and property-owner against onerous and excessive taxation. The sections of the Code of Iowa relied on by the relator were held by the court, and we think correctly, not to confer the right upon the city to levy taxes to an amount greater than the charter-rate. These sections occur in the general statutes of the state in the chapter on "Executions." They do not confer upon the city a distinct, substantive, grant of the power of taxation; but can have effect by compelling the city to levy, in accordance with its charter and as far as it has the power to do so, a tax to pay the debt. The case before the court, then, was one where the charter of the city prohibited a rate of taxation for any one year to "exceed one dollar on each one hundred dollars' worth of property taxed." That amount the city had actually levied. The court held that more could not be le-

gally required of it. The legal principles upon which this portion of the decision rests seem to the writer to be plain. No lawyer will question the correctness of the proposition that neither a city nor any other civil body can exercise the right or power of taxation unless such power or right be expressly conferred by the legislature. Recognising this well-known principle, it is said in a very recent case (12 Iowa, 545), "that no property can lawfully be taxed until the legislature authorizes it to be done, and when the act requires it to be done in a particular way, that way alone can be pursued." It follows that if the legislature has conferred no power of this kind, the city or other political body can exercise none. If such power is delegated to a limited extent, it can be exercised to that extent, but no further. It seems, also, necessarily to follow, that the power to create a liability does not per se imply or carry with it the power to levy and collect a tax to discharge such liability. The grant of power to levy and collect taxes must be clear, distinct, and express. In the charter of the city of Burlington the same grant which gave the power contained also the limitations upon the extent to which it might be exercised.

The precise question decided in the foregoing case has not, to the writer's knowledge, at least as respects cities, been elsewhere adjudicated. It was raised in the case of Com. v. Council of City of Pittsburgh, 34 Pa. St. 496. By the act of 1804, incorporating the town of Pittsburgh, the levy of a tax in any one year exceeding half a cent on the dollar was prohibited except upon certain conditions, which had not been complied with. But the court held that as the special act of 1853, which authorized the city to subscribe the stock, also authorized it to borrow money and to provide funds for its payment by the levy and collection of such taxes as might be necessary, that this amounted to a repeal pro tanto of any prior statutory restrictions (if any there were) upon the exercise of the right of taxation. But the principle involved in the leading case is everywhere admitted. Thus, in the elementary treatise on the subject the law is thus stated and the authorities cited: "The power to levy the tax is a limited one, and if the limits prescribed by the law are transcended, the levy is void." Blackw. Tax. Titles, 190. "The power of taxation is the highest attribute of sovereignty. It cannot be enforced against the citizen unless it is clearly and distinctly authorized by law." Id. 194. "A municipal corporation or other inferior organization possesses no power to levy taxes not expressly authorized by its act of incorporation. Where they are thus authorized they must, in the exercise of the power, conform to the principles and requirements of the constitution." Id. 196, 197. "The exercise of the power to levy taxes by the fiscal agents or officers of a county, city, town, &c., is not a judicial, but a ministerial act, and is discretionary within the limits prescribed by law." Id. 196. In the case of Kemper v. McClelland's Lessee, 19 Ohio, 308,—a case in many respects strikingly like the one under review,—these general principles were applied. A law of Ohio provided that taxes to be levied for county purposes should not "exceed three mills on the dollar." The commissioners, notwithstanding, imposed a tax of four and a half mills, and the court held that the levy and all tax sales made to pay the same were unauthorized and void.

III. Other questions might be suggested, but cannot be discussed at this time. Can the legislature, for example, as against an existing creditor, by an amendment to the law, reduce the limit or abridge the power of taxation? Again: On the answer of the city, in the principal case, that it had levied a general tax as large as the law permitted, the court denied a mandamus to compel the levy of a special tax. On the general tax the judgment-creditor would have no lien. And as officers of municipal corporations are generally held not subject to garnishment, the creditor could acquire no lien on the proceeds of

such general tax. Suppose the city, when the tax was collected, should refuse to pay the judgment-creditor, could not the courts compel it to do so by mandamus or other appropriate remedy? Suppose the city should act in bad faith and misappropriate the tax, could not the courts, by injunction or otherwise, protect the creditor and compel the city to do right? But suppose the city, without acting in positive bad faith, should need or appropriate all the general tax in carrying on the legitimate functions of the corporation, such as paying officers, repairing streets, &c., &c., can it be restrained from so doing by a judgment-creditor? Has a judgment-creditor, under such circumstances, the right to be paid and to insist, if necessary, that the officers of a city, or at least that those who extend credit to it afterwards, shall take the scrip or credit of the city, and in their turn obtain judgment and payment? Has a judgment-creditor any greater rights than a non-judgment creditor? If so, are judgments to be paid in the order of their date? These and similar queries of a like practical character may be started, to many of which it would be difficult to find answers in cases already adjudged. They open to an inviting field, on the confines of which, even, we cannot enter at this time. We propose to give the results of our explorations of it on a future occasion, if not anticipated by others.