Dawson County v. Clark.

DAWSON COUNTY v. S. H. H. CLARK ET AL., RECEIVERS.

FILED JUNE 21, 1899.    No. 10560.

1. **Statutes:** REPEAL. Repeals of statutes by implication are not favored.

2. ——: GENERAL PROVISIONS: CONSTRUCTION. It is a cardinal rule of construction that an act whose provisions are general will not, unless unavoidable, be so interpreted as to affect more particular and positive provisions of a prior act on the same subject.

3. ——: CONSTRUCTION: PAYMENT OF JUDGMENTS AGAINST MUNICIPALITIES. The act of 1867, known as article 6, chapter 77, Compiled Statutes, is not repealed by section 69, article 1, chapter 14, Compiled Statutes.

4. ——: ——: ——. Statutes in pari materia should be construed together, and, if possible, effect be given to all of their provisions.

5. ——: ——: ——. By the provisions of article 6, chapter 77, Compiled Statutes, power is conferred to levy taxes upon the taxable property of a city, village, or school district to pay a judgment rendered against the corporation.

6. **Taxation:** PAYMENT OF JUDGMENT AGAINST CITY. A tax can be lawfully levied to pay a judgment against a city having less than 5,000 inhabitants, or a village, even though the maximum amount of taxes authorized by statute to be assessed for general corporate purposes has been imposed.

7. ——————: Limit for School Purposes. Section 11, subdivision 2, chapter 79, Compiled Statutes, limits the amount of taxes which may be imposed by a school district to twenty-five mills on the dollar of assessed valuation for all purposes, except the payment of bonds issued by the district and the purchase and lease of a schoolhouse.

8. ——————: School Districts: Payment of Judgment. A tax to pay a judgment against a school district cannot be levied and collected where the maximum amount of taxes authorized by statute for all purposes has already been levied.

Error from the district court of Dawson county. Tried below before H. M. Sullivan, J. *Reversed.*

*George C. Gillan* and *Warrington & Stewart,* for plaintiff in error.

References: *Jackson v. Washington County,* 34 Neb. 680; *State v. Babcock,* 21 Neb. 599; *Beatrice Paper Co. v. Beloit Iron Works,* 46 Neb. 900; *State v. Hay,* 45 Neb. 321; *Hendrix v. Rieman,* 6 Neb. 516; *State v. Babcock,* 21 Neb. 599; *State v. Lancaster County,* 4 Neb. 540; *Darst v. Griffin,* 31 Neb. 668; *Chicago, B. & Q. R. Co. v. Klein,* 52 Neb. 258.

*W. R. Kelly* and *E. P. Smith, contra.*

References: *Leavenworth v. Norton,* 1 Kan. 432; *Supervisors v. United States,* 85 U. S. 71; *Grand Island & N. W. R. Co. v. Baker County,* 45 Pac. Rep. [Wyo.] 494; *Kemper v. McClelland's Lessee,* 19 O. 308; *Wright v. City of Chicago,* 20 Ill. 252; *Young v. Lone,* 43 Neb. 812; *State v. Sheldon,* 53 Neb. 365; *State v. Gosper County,* 14 Neb. 22; *Commissioners v. Blake,* 25 Kan. 356; *Wheeler v. City of Plattsmouth,* 7 Neb. 270; *Clark v. City of Davenport,* 14 Ia. 494; *Porter v. Thompson,* 22 Ia. 391; *Iowa Railroad Land Co. v. Sac County,* 39 Ia. 125; *Jeffries v. Lawrence,* 42 Ia. 498; *Mayor v. McGruder,* 34 Md. 381; *Burnes v. City of Atchison,* 2 Kan. 454; *Burlington & M. R. R. Co. v. City of York,* 4 Neb. 487; *State v. Weir,* 33 Neb. 35; *Union P. R. Co. v. Dawson County,* 12 Neb. 254.

NORVAL, J.

Dawson county sued the receivers of the Union Pacific Railway Company to recover $1,118.62, being the amount of certain taxes levied for the year 1895 upon the road-bed, rolling stock, etc., of said company in the hands of the defendants, as receivers, for the purpose of paying certain judgments against the city of Lexington, the village of Gothenburg, and school district No. 1, respectively. There was a trial to the court upon an agreed statement of facts, and, from a judgment in favor of the defendant, an error proceeding has been prosecuted by the plaintiff.

The facts stipulated by the parties are as follows:

"1. That the county commissioners of Dawson county, Nebraska, while sitting as a board of equalization in June, 1895, and while making the tax levy for said year, made the following levies, for county purposes, for 1895, to-wit: For county general fund, 9 mills on the dollar; for county road fund, 2 mills on the dollar; for county bridge fund, 3 mills on the dollar; for county insane fund, ½ of 1 mill on the dollar; and for the relief of indigent soldiers and sailors' fund, 1-10 of 1 mill on the dollar.

"2. That in addition to the above levies so made, and in accordance with resolutions, notices, and certificates from proper officers of the city of Lexington, the village of Gothenburg, and from school district No. 1, in said Dawson county, Nebraska, the following levies were made by said county commissioners of said Dawson county, Nebraska, for said year 1895:

"City of Lexington: For general revenue, 10 mills on the dollar; for water bonds, 12½ mills on the dollar; for electric lights, 3 mills on the dollar; and for judgment fund, 15 mills on the dollar.

"Village of Gothenburg: For general revenue, 10 mills on the dollar; for electric lights, 5 mills on the dollar; and for judgment fund, 5 mills on the dollar.

"School District No. 1: For school district, 25 mills on

the dollar; for bond tax, 10 mills on the dollar; for judg-
ment fund, 20 mills on the dollar, the same being the
judgment referred to in plaintiff's petition in said case.

"That the judgment against the city of Lexington was
upon a valid claim for the sum of $3,998; that the judg-
ment against the village of Gothenburg was upon a valid
claim for the sum of $106.87; and that the judgment ·
against school district No. 1 was upon a valid claim for
the sum of $705.05; and that none of said judgments, or
any part thereof, have been paid. And it is further stip-
ulated and agreed that the amount of revenue derived
from the taxes levied and collected for ordinary revenue
purposes was insufficient to meet and pay the current
expenses for said year 1895, and also to pay said judg-
ments against the city of Lexington, school district No. 1,
and the village of Gothenburg. It is admitted that part
of the Union Pacific Railway, the same being included
in the Union Pacific System, mentioned in said petition,
runs through said city, village, and school district, and
is located in Dawson county, Nebraska, being a part of
the Union Pacific Railway System, in the hands of the
receivers of said company, and that it is affected to the
extent of its proportion of said levies. It is admitted that
the amount due from these defendants, on said levies, if
it shall be found that the same are valid and legal, and
that said tax was legally assessed, and within the power
of the proper officers of said city, village, and school dis-
trict to make, amounts to the sum of $1,118.62, which
sum the said defendants refuse to pay, and still refuse,
for the alleged reason that the same was illegally levied
and imposed by the officers so levying and imposing the
same, the same being beyond the limit imposed by the
statute for such taxation, as contended by the defendants
herein; that the several judgments herein mentioned,
were not founded on any bonds issued by said city, village,
or school district, or any kind whatever, and that there
had never been any special vote by the voters of said
city, village, or school district recognizing these judg-

ments, and providing that they should be paid by a tax levy, but that said judgments were upon a valid claim, against said city, village, and school district."

The sole question presented for determination is this: Can a tax be levied to pay a judgment against a city of the second class having less than 5,000 inhabitants, a village, or school district when not empowered so to do by a vote of the electors, in addition to the amount of general tax authorized by law to be imposed for city, village, or school district purposes? If an affirmative answer be given to the proposition, the taxes sought to be recovered in this case were legal, otherwise invalid, and the judgment of the district court so holding should be affirmed.

The power conferred upon cities of less than 5,000 inhabitants and villages to levy taxes is contained in section 69, article 1, chapter 14, Compiled Statutes of 1895. The first and second subdivisions of said section are as follows:

"I. To levy taxes for general revenue purposes not to exceed ten mills on the dollar in any one year on all property within the limits of said cities and villages, taxable according to the laws of the state of Nebraska, the valuation of such property to be ascertained from the books or assessment rolls of the assessor of the proper precinct or township.

"II. To levy any other tax or special assessment authorized by law."

By subdivision 1 the authority is conferred to impose a tax not exceeding ten mills on the dollar within any one year for general revenue purposes, and if it were not for subdivision 2 of said section 69, or some other provision of statute, it could not be doubted that ten mills on the dollar valuation would be the maximum limit of taxes that could be imposed in a single year by cities of the second class and villages, since it is a familiar principle that municipal corporations can exercise only such powers as the legislature has granted. But the lawmakers

have by said subdivision 2 conferred upon such cities and villages the right "To levy any other tax or special assessment authorized by law." Therefore, if there exists a statute which permits the levy of a tax to pay a judgment obtained against the city of the class named, or a village, it would seem too plain to require argument that the taxes in question imposed for the purpose of paying the judgments against the city of Lexington and the village of Gothenburg, respectively, are valid and should be sustained. Plaintiff asserts the validity of said taxes upon the provisions of sections 1, 2, 3, and 4, article 6, chapter 77, Compiled Statutes of 1895, which are here reproduced:

"Sec. 1. That whenever any judgment shall be obtained in any court of competent jurisdiction in this territory for the payment of a sum of money against any county, township, school district, road district, town or city board of education, or against any municipal corporation, or when any such judgment has been recovered and now remains unpaid, it shall be the duty of the county commissioners, school district board of education, city council, or other corporate officers, as the case may require, to make provisions for the prompt payment of the same.

"Sec. 2. If the amount of revenue derived from taxes levied and collected for ordinary purposes shall be insufficient to meet and pay the current expenses for the year in which the levy is made, and also to pay the judgment remaining unpaid, it shall be the duty of the proper officers of the corporation, against which any such judgment shall have been obtained and remaining unsatisfied, to at once proceed and levy and collect a sufficient amount of money to pay off and discharge such judgments.

"Sec. 3. The tax shall be levied upon all the taxable property in the district, county, township, town or city, bound by the judgment, and shall be collected in the same manner and at the same time provided by law for the collection of other taxes.

"Sec. 4. The corporate officers whose duty it is to levy

and collect taxes for the payment of current expenses of any such corporation, against which a judgment may be so obtained, shall also be required to levy and collect the special tax therein provided for, for the payment of judgments."

It is insisted in the brief of counsel for defendants that these four sections merely impose a duty, without conferring any power, to levy a tax with which to pay judgments. To this we are unable to yield assent. It would be remarkable for the legislature to make it the duty of cities or villages and school districts to proceed at once to levy and collect a tax sufficient to pay any judgments recovered against the municipality and at the same time withhold the power so to do. The language of the sections will not admit of the construction placed thereon by counsel for the receivers, especially when due consideration, force, and effect are given to sections 3 and 4 above quoted. Section 3 specifies upon what property the levy to pay such a judgment shall be made, and when and in what manner the same shall be collected; and section 4 requires that the officers, upon whom is devolved the duty of levying and collecting general taxes of the corporation against which a judgment has been rendered, shall levy and collect the tax to pay such judgment. Section 5 of said article 6 not only makes the officers whose duty it is to levy the tax personally liable for the payment of the judgment if after due demand they shall refuse or neglect to make the levy, but authorizes the owner of the judgment to invoke the writ of mandamus to compel the levy and collection of the tax. The provisions of the several sections are mandatory. They were enacted by the legislature of 1867 (General Statutes 1873, p. 934), and were before the court for consideration in *Jackson v. Washington County*, 34 Neb. 680. In that case it was contended that the act of 1867 (Compiled Statutes, ch. 77, art. 6) was repealed by implication by the general revenue law passed in 1879, and especially by section 77 of said act (Session Laws 1879, p. 305), which makes pro-

visions for the levying of taxes for county purposes, but this court refused to sanction the doctrine, and expressly ruled that said article 6 was not thus repealed, the court in the opinion saying: "The rule is that repeals by implication are not favored, and when acts upon the same subject can be harmonized by a fair and liberal construction, it will be done. (Sedgwick, Construction of Statutory & Constitutional Law 98; *Lawson v. Gibson*, 18 Neb. 137; *State v. Babcock*, 21 Neb. 599.) And this rule has especial application to cases where the subsequent statute treats of the subject in general terms but not expressly contradicting the more particular and positive provisions with reference to the same subject in a prior act. (*Fosdick v. Village of Perrysburg*, 14 O. St. 486; *Brown v. County Commissioners*, 21 Pa. St. 43.) In *State v. Dwyer*, 42 N. J. Law 327, the court says: 'Where a general law and a special statute come in conflict, the general law yields to the special without regard to priority of date, and a special law will not be repealed by a general statute, unless by express words or necessary implication.' Applying these rules of construction to the statutory provisions in question it is possible to give effect to each." In the light of the doctrine recognized and applied in that case there is no escaping the conclusion that the said act of 1867 was not repealed by implication by the adoption of section 69, article 1, chapter 14, Compiled Statutes, inasmuch as there is no conflict between the two statutes, but the provisions thereof can, and should be, so construed as to give effect to each and all of them.

The conclusion reached is strengthened by a consideration of section 82, article 1, of said chapter 14, relating to city and village taxes and the certification thereof to the county clerk, which contains among others the following provision: "The amount which may be so certified, assessed, and collected shall not exceed ten mills on the dollar to defray its general and incidental expenses, together with any special assessments or special taxes, or amounts assessed as taxes under the provisions of this

chapter, and such sum as may be authorized by law to be levied for the payment of outstanding bonds and debts." This language is indicative of the legislative purpose that taxes other than those imposed in cities and villages of the class we have been considering, levied for the payment of outstanding debts or obligations against the municipality, such as a judgment rendered, could properly be certified to the county clerk. Why to be thus certified unless the amounts were to be levied and collected? To ask the question is to invoke an affirmative answer. Article 6 of chapter 77, Compiled Statutes, did not extend, nor was its purpose to do so, the limit of taxation fixed by section 69 of chapter 14, for the obvious reason that the first named act was in point of time first enacted. To sustain the taxes levied against the city of Lexington and village of Gothenburg, respectively, it was not necessary that the limit of taxation prescribed by said section 69 should be extended. As already stated, the legislature has in the second subdivision in express terms granted to the cities and villages governed by the act the absolute and unqualified right to levy taxes other than those for general revenue purposes authorized by statute. The legislature having empowered cities of the second class having less than 5,000 inhabitants, and villages, to raise by taxation an amount sufficient to pay any judgment obtained against the corporation, we are forced to the conclusion that the taxes in question levied against the property within the city of Lexington and the village of Gothenburg, respectively, are legal, and that the district court erred in holding the same invalid. That such taxes may be collected by an action at law seems to be conceded by the parties, and for present purposes we assume such to be the case, without expressing an opinion on the subject.

There remains to be considered the validity of the school district tax. Sections 11 and 12, subdivision 2, chapter 79, Compiled Statutes, relate to the levy and collection of taxes by school districts, which sections are as follows:

"Sec. 11. The legal voters at any annual meeting shall determine by vote the number of mills on the dollar of the assessed valuation which shall be levied for all purposes—except for the payment of bonded indebtedness and purchase or lease of schoolhouse—which number shall not exceed twenty-five (25) mills in any year. The tax so voted shall be reported by the district board to the county clerk, and shall be levied by the county board, and collected as other taxes.

"Sec. 12. The legal voters may also, at such meeting, determine the number of mills, not exceeding ten mills on the dollar of assessed valuation, which shall be expended for the building, purchase, or lease of schoolhouse in said district, when there are no bonds voted for such purpose, which amount shall be reported levied and collected as in the preceding section; *Provided*, That the aggregate number of mills voted shall not exceed twenty-five (25) mills."

These sections, it is very evident, contained two restrictions upon the taxing powers of a school district: First—Under neither section is authority given to levy a tax unless the same has been sanctioned by the legal voters at the annual school meeting. Second—The legislature has fixed the maximum of amount of such taxes that can be imposed, which under section 11 is twenty-five mills on each dollar of the assessed valuation for all purposes, except the payment of bonds and the purchase and lease of schoolhouse. Section 12 cannot be invoked here, as the taxes assailed were not levied under the provisions thereof or for the purposes therein specified. It appears from the agreed statement of facts that school district No. 1 of Dawson county in 1895 levied the maximum amount authorized by said section 11, and in addition thereto a tax of twenty mills was imposed to pay a judgment recovered against the district.

Reliance is also placed by plaintiff upon article 6, chapter 77, Compiled Statutes, already considered, to sustain said taxes. The provisions of said article authorize the

levy of a tax to pay a judgment obtained against a school district, but section 11 of the school law quoted contains no provision for the levy and collection of such tax in addition to the maximum amount named in said section of twenty-five mills. In this respect said section differs materially from section 69, article 1, chapter 14, Compiled Statutes. The provisions of said article 6, relating to the levy and collection of taxes to pay judgments, and section 11 must be construed together as if they were one law, and effect be given to both acts. When so read and construed it is plain enough that a school district may legally levy a tax to pay a judgment against it, but such tax, including those levied for all other purposes, except for the payment of bonds issued by the district and the purchase and lease of a schoolhouse, cannot in the aggregate exceed twenty-five mills on the dollar of the assessed valuation of the property within the school district. This interpretation gives effect to every clause in both acts, according to the rule for the construction of statutes. The other construction for which the county contends would do violence to the plain language of said section 11, and extend the taxing power of a school district beyond the limit therein prescribed. While school district officers may levy taxes to pay judgments, in doing so they must keep within the maximum limit of taxation authorized by statute. The tax in question imposed by school district No. 1 is illegal and void. (*United States v. City of Burlington*, 24 Fed. Cas. 1302; *Supervisors v. United States*, 85 U. S. 71; *Grand Island & N. W. R. Co. v. Baker*, 45 Pac. Rep. [Wyo.] 494; *Commissioners of Osborn County v. Blake*, 25 Kan. 356.) For reasons stated the judgment is

REVERSED.