JOHN D. HURLEY, APPELLANT, V. BROTHERHOOD OF
RAILROAD TRAINMEN, APPELLEE.

25 N. W. 2d 29

FILED NOVEMBER 29, 1946.   No. 32078.

*Charles A. Fisher* and *Greydon L. Nichols,* for appellant

and cross-appellee.

E. D. Crites, for appellee and cross-appellant.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

Plaintiff commenced this suit against the Brotherhood of Railroad Trainmen to recover damages alleged to have resulted from a violation of his rights as a member of the defendant union. From an order directing a verdict for the defendant the plaintiff appeals.

The appeal presents questions concerning the liability of the defendant to suit in Nebraska, the sufficiency of the process, and the right of plaintiff to sue defendant for violation of rights existing under defendant's collective bargaining agreement with the Chicago and North Western Railway Company while the plaintiff was a member of the defendant union.

The defendant is a labor union, an unincorporated voluntary association, having for its purpose the promotion of the best interests of its membership composed of railroad trainmen, with its general offices at Cleveland, Ohio. It appears also that defendant operated an insurance department as a collateral activity until February 1, 1936. On that date the insurance department was incorporated as the Brotherhood of Railroad Trainmen Insurance Department under the laws of the state of Ohio. It is not disputed that the present action is unrelated to any question of insurance.

The basis of the action for damages grows out of the following state of facts: The plaintiff was a train conductor, working as a brakeman for the Chicago and North Western Railway Company on December 19, 1937. At 12:45 a.m. of said day, and several hours after he had been released from duty as a brakeman, plaintiff was found removing three cases of cigarettes from the way car of the train on which he had been working. Plaintiff was notified by the railroad company to appear for investigation in accordance with the provisions of the collective bargaining agreement

existing between the defendant union and the Chicago and North Western Railway Company. The plaintiff was found guilty of the theft of the cigarettes and dismissed from the service. An appeal was taken to the highest operating officer of the railroad authorized to finally pass upon the case and the dismissal upheld. Plaintiff then directed the general chairman of the grievance committee of the defendant union to appeal the case to the National Railroad Adjustment Board. The purported appeal to that board was dismissed for the reason that "The provision concerning appeal within 90 days, contained in the fifth paragraph of Rule 83 of the Agreement, was not complied with by the complainant and was not waived by the carrier."

It is the contention of plaintiff that he has been damaged to the extent of $50,000 because of the failure of defendant's general chairman to properly perfect the appeal. Plaintiff alleges that the appeal if perfected would have been sustained by the National Railroad Adjustment Board, which action would have entitled him to pay for all time lost, amounting to more than two years. The primary reason advanced in support of the assertion that the National Railroad Adjustment Board would have sustained the appeal, if it had been properly taken under Rule 83, is the fact that plaintiff was acquitted in the United States District Court for Nebraska, Chadron Division, of the offense of stealing goods constituting the whole or a part of an interstate shipment. Many reasons exist for stating that the acquittal of the special crime charged did not establish the innocence of the plaintiff in a suit for damages; in fact, we do not think the evidence was even admissible for that purpose. Hampton v. Westover, 137 Neb. 695, 291 N. W. 93; Lillie v. Modern Woodmen of America, 89 Neb. 1, 130 N. W. 1004; Ex Parte Wall, 107 U. S. 265, 27 L. Ed. 552, 2 S. Ct. 569.

The record discloses that upon the commencement of the action a summons was issued directing the sheriff of Dawes County to notify the "Brotherhood of Railroad Trainmen"

that it had been sued. The sheriff's return shows that the summons was served by leaving a copy at its usual place of doing business in Dawes County, with Harry L. Williams, a secretary-treasurer of said defendant association. The return further recites that the summons was further served by delivering a copy therof to Clifford Walker, the president of the lodge of the defendant located in Dawes County, and by delivering a copy to Harry L. Williams, the secretary-treasurer of said lodge of the defendant in Dawes County. It also appears that a summons was issued to Lancaster County and served upon the defendant by delivery to the Director of the Department of Insurance and further upon said defendant by delivery to the Auditor of Public Accounts. The defendant appeared specially and objected to the jurisdiction of the court over the person of the defendant and properly preserved that objection throughout the course of the trial.

We do not think the service of summons upon the Director of Insurance, as provided by section 44-137, R. S. 1943, gave the court jurisdiction of the person of the defendant. The insurance business conducted for the benefit of railroad trainmen was carried on by the Brotherhood of Railroad Trainmen Insurance Department, a corporation, an entirely different entity from the Brotherhood of Railroad Trainmen, an unincorporated association. In addition thereto the basis of the action was entirely unrelated to any matter connected with insurance.

In Simpson & Smith v. Grand International Brotherhood of Locomotive Engineers, 83 W. Va. 355, 98 S. E. 580, a case very similar to the one at bar, it was said: "The Grand International Brotherhood of Locomotive Engineers and the Locomotive Engineers Mutual Life and Accident Association, the two corporations to which reference has been made, are not identical. The Grand International Brotherhood covers vastly more ground than the insurance association. Its purpose is the promotion of the general interests of railway locomotive engineers. The insurance as-

sociation merely provides life and accident indemnities for such members of the Brotherhood as become certificate or policy holders therein, and the building association is a corporation owning and managing a Brotherhood building in the City of Cleveland, Ohio. Though all members of the Brotherhood having the necessary physical qualifications are expected or required to become members of the insurance association, and membership in the Brotherhood is a condition both precedent and subsequent to right of membership in the insurance association, all members of the Brotherhood are not members of that association. The estimated number of those who are not members of the latter, because they are physically disqualified from such membership, is estimated at about four thousand. The insurance association limits the scope of its insurance business, as any other insurance corporation might, to members of the Brotherhood in good standing, and makes its collections of assesments for payment of indemnities through the officers of the local division of the Brotherhood. Nevertheless, the insurance association is a distinct entity from the Brotherhood. It is a corporation capable of contracting, suing and being sued and owning and holding property as fully and completely as an individual may own and hold it, and the association known as the Brotherhood has no such capacity and is not in any legal sense the owner of the assets of the insurance asociation, nor liable on its contracts of insurance. That an unincorporated society and an incorporated insurance association, composed of members of the former, and affiliated with it, are not identical has been expressly decided in Hajek v. Bohemian-Slavonian Benevolent Society, 66 Mo. App. 568. Relationship of the institutions is not determinative of the question of identity. Almost anything conceivable bears some sort of relation to everything else. The common features of animals do not make them identical. Nor does the close relation of parent and offspring in the same species. Obviously, these organizations are not actually nor legally identical. Nor does the relation

subsisting between them make the Brotherhood a fraternal benefit society within the meaning of the statute." See, also, Grand International Brotherhood of Locomotive Engineers v. Green, 206 Ala. 196, 89 So. 435. In Clark v. Grand Lodge of the Brotherhood of Railroad Trainmen, 328 Mo. 1084, 43 S. W. 2d 404, relied upon by the appellant, it was held under a similar statute that an unincorporated insurance association was amenable to suit to compel it to perform the insurance contracts or to enforce such contracts, wherever it was organized and wherever its principal office. In distinguishing the Clark case from one similar to the one at bar, the Missouri court in Ruggles v. International Association of Bridge, Structural and Ornamental Iron Workers, 331 Mo. 20, 52 S. W. 2d 860, said: "The present suit is not a suit on a contract of insurance or any other contract." Clearly the service of summons upon the Director of Insurance gave no jurisdiction to the court over the person of the defendant under the facts here shown.

The serving of a summons upon the Auditor of Public Accounts indicates an attempt to serve process upon the defendant under the provisions of section 24-1201, Comp. St. 1929. This section is a provision providing a method of securing service of process upon foreign corporations. The evidence in this case clearly discloses that defendant is not a corporation at all and consequently nothing can be gained by serving a summons in accordance with its provisions.

It is argued by the plaintiff that defendant is amenable to process under the provisions of sections 25-313 and 25-314, R. S. 1943, which provide:

"Any company or association of persons formed for the purpose of carrying on any trade or business, or for the purpose of holding any species of property in this state, and not incorporated, may sue and be sued by such usual name as such company, partnership or association may have assumed to itself or be known by. It shall not be necessary in such case to set forth in the process or pleadings or to prove

at the trial the names of the persons composing such company."

"Process against any such company or firm shall be served by a copy left at its usual place of doing business within the county with one of the members of such company or firm or with a clerk or general agent thereof. Executions issued on any judgments rendered in such proceedings shall be levied only on partnership property."

These statutes are in derogation of the common law where the rule was that an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the name of its members, and their liability had to be enforced against each member. While it is true that the federal courts have evolved certain exceptions to the common-law rule as evidenced by United Mine Workers of America v. Coronado Coal Company, 259 U. S. 344, 66 L. Ed. 975, 42 S. Ct. 570, 27 A. L. R. 762; Williams v. United Mine Workers of America, 294 Ky. 520, 172 S. W. 2d 202, 149 A. L. R. 505, and Rule 17 (b) of the Federal Rules of Civil Procedure, 28 U. S. C. A., following section 723c, yet, when the claimed right is not one existing under the Constitution or laws of the United States, the common-law rule must apply except to the extent it has been modified by statute. Consequently, the suability of an unincorporated association in Nebraska, when the federal rule has no application, is dependent entirely upon the statutes heretofore cited.

The defendant is not an unincorporated association "formed for the purpose of carrying on any trade or business, or for the purpose of holding any species of property in this state" within the purview of section 25-313. The purposes of the defendant are set out in the preamble of its 1939 Constitution in the following language: "To unite the Railroad Trainmen and Bus Operators, to promote their general welfare and advance their interests, social, moral, and intellectual; to protect their families by the exercise

of benevolence, very needful in a calling so hazardous as curs, this fraternity has been organized." It was not organized to carry on a trade or business or for the purpose of holding any species of property in this state. The fact that subordinate local unions existed in Nebraska with one located in Dawes County, operating with officers of its own selection, does not constitute it a place for carrying on a trade or business for the defendant. Evidence that defendant may have owned some property in the county is not sufficient to bring the defendant within the purview of the statute for the reason that defendant organization is not one formed for the purpose of holding any species of property in this state. By serving a summons upon the president and secretary-treasurer of the local union, jurisdiction was not obtained over the person of the defendant. Even if these officers of the local union could be construed as members of the unincorporated defendant association, the further requirement of the statute that they must be served at the usual place at which the association does business within the county has not been met. § 25-314, R. S. 1943. The association having no usual place of doing business in the county, it is evident that a valid service of summons could not be had in Dawes County under the facts here shown. This has been the law of Nebraska from its early beginnings as a state. In Burlington & Missouri River R. R. Co. v. Dick & Son, 7 Neb. 242, we said: "Another requisite is that it must appear that the company is formed to carry on some trade or business, or to hold some species of property in this state, and is not incorporated. In the case at bar, it appears from the record that the requirements of the special provisions were not complied with; and therefore the judgment of the district court, and also the judgment of the county judge must each be reversed and the cause remanded, * * *." See Cleland v. Anderson, 66 Neb. 252, 92 N. W. 306; Allis-Chalmers Co. v. Iron Molders' Union No. 125, 150 F. 155.

The plaintiff further urges that the defendant is a corporation under the provisions of section 21-608, R. S. 1943. The portion of the statute with which we are here concerned reads as follows: "All state, grand, supreme or national, secret, fraternal, benevolent or charitable orders, lodges, organizations, societies or other bodies issuing charters to and having subordinate or auxiliary orders, lodges, organizations, societies or other bodies within this state which may have been heretofore or may hereafter be regularly established and chartered therefrom, or thereby, including the following: (Then follows a long list of specifically named lodges which does not include any labor or trade union) * * * together with each and every subordinate or auxiliary lodge, encampment, tribe, company, council, post, corps, department, society or other designated organization or body within this state, * * * be and the same are hereby made and declared corporations within the state under the name and title designated in the respective charters or constitutions by which name they shall be capable of suing, and being sued, * * * the same as natural persons."

Prior to the amendment of the foregoing section in 1935, a portion of the quoted statute read: "together with each and every subordinate or auxiliary lodge, encampment, tribe, company, council, post, corps, department, *union*, society or other designated organization or body within this state, * * *." Comp. St. 1929, § 24-607. (Emphasis supplied.)

We think it is clear that when the Legislature used the word "union" in listing the organizations included in the act and then took the word out at a subsequent date, it demonstrated a legislative intent that a union was no longer to be included under the provisions of the act. It is the duty of the court to give effect to the legislative intent unless it be inhibited by constitutional provision. While it is clear from an examination of section 21-608, R. S. 1943, that the statute was intended to be broad in its application to organizations of the class therein described, the action of the Legislature, in eliminating the name of one formerly

specifically mentioned as being within the general class with which the legislation dealt, evidences a positive intent on the part of the Legislature to eliminate the one from the application of the statute. Collins v. Russell, 8 Cir., 114 F. 2d 334. This intent must be given effect with the result that we are required to say that section 21-608, R. S. 1943, has no application to a union, and consequently a labor union will not be deemed to be a corporation by virtue of that section. And, since a labor union is not therefore a corporation, the process afforded by statute for use in acquiring jurisdiction over corporations is not appropriate.

The general rule seems to be that it will be presumed that the Legislature, in adopting an amendment, intended to make some change in the existing law and that the courts will endeavor to give some effect thereto. A change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended, as where material words in the original act are deleted by the amendatory act. 59 C. J., Statutes, § 647, p. 1096.

This court has announced the rule in the following language: "In considering an amendatory or substituted statute, it is proper to consider the provisions of the law which was repealed in connection with the law which takes its place, in order to ascertain the legislative intent, and all provisions of the original statute which are not carried forward into or repeated in the new law are annulled by the repealing statute." Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415. See, also, Mills v. Mills, 130 Neb. 881, 266 N. W. 759; Thurston County Farm Bureau v. Thurston County, 136 Neb. 575, 287 N. W. 180.

It is evident that the only legislative intent which can be drawn by the dropping of the word "union" from the original act is an intent to eliminate unions from the applicability of the statute. This is the construction we are required to give the amended statute.

We are of the opinion, therefore, that the special appearance of the defendant raising the sufficiency of the service

of process to obtain jurisdiction over the person of the defendant is well taken and that the district court did not err in dismissing the action.

AFFIRMED.