THE STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, APPELLANT, V. LORAN DRAWBAUGH, APPELLEE.

65 N. W. 2d 542

Filed July 23, 1954.  No. 33547.

150

*Kirkpatrick & Dougherty,* for appellant.

*Tomek & Tomek,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in replevin brought by the State Farm Mutual Automobile Insurance Company, plaintiff, against Loran Drawbaugh, defendant, in the district court for Butler County to obtain possession of a 1950 Chevrolet automobile.

The plaintiff alleged in its petition and affidavit filed on February 27, 1952, that the plaintiff had been, since the 27th day of January 1951, the owner of one 1950 Chevrolet automobile, describing it, and was entitled to immediate possession thereof. By an amended petition filed on September 6, 1952, shortly before trial, the plaintiff alleged ownership of the automobile and that it was the holder of the legal title thereto and entitled to immediate possession thereof.

The defendant's answer admitted that plaintiff was engaged in the general writing of fire and theft automobile insurance and licensed to transact business in this state; denied generally all other allegations of the plaintiff's petition, and further alleged that the defendant was the sole owner of the automobile; and prayed that the plaintiff's petition be dismissed, that the automobile be returned to the defendant, or upon failure to return it, the defendant have judgment for the value of the pos-

session of the automobile in the sum of $1,500, and for costs. The plaintiff's reply was a general denial of the affirmative allegations of the defendant's answer.

At the close of the evidence both parties made motions for directed verdict and stipulated that the court should decide the issues presented. The trial court overruled the motion of the plaintiff and sustained the motion of the defendant, and found for the defendant because the plaintiff did not sustain the burden of proving that it had ownership or title to the automobile in question on the day it filed its action in replevin, and that the plaintiff should pay to the defendant the stipulated value of the car plus legal interest from the date the car was taken under the writ of replevin. The court entered judgment in favor of the defendant and against the plaintiff in the sum of $1,250, with interest from the 28th day of February 1952, until paid, and costs of the action.

The car involved was purchased by Clarence Anderson from the Central Chevrolet Company at Grand Island. He received a manufacturer's certificate. Certificate of title was issued by the county clerk of Hall County to Clarence Anderson upon a proper application which conformed to the requirements of section 60-114, R. R. S. 1943. He had the car from June 27, 1950, to January 12, 1951. He parked the car in front of his apartment in Lincoln on the evening of January 12, 1951, and left it there. In the morning it was missing. He made a claim against the plaintiff for the loss sustained either on January 13 or 14, 1951. The plaintiff paid the loss to Anderson on the 27th of January 1951, took his release, and at the same time took an assignment of the certificate of title as appears on the reverse side thereof. The car was found in the possession of the defendant at his farm home. He claimed to be the owner of the car, and had obtained a certificate of title under date of May 16, 1951, from the county clerk of Butler County. The title was from one Lloyde G. Deppe.

There is no question but that the automibile found in

the possession of the defendant was the automobile owned by Anderson upon which the plaintiff paid the loss and received the certificate of title and the assignment of the automobile from Anderson. Nor is there any question but that this automobile was stolen.

The car was taken under a writ of replevin on February 27, 1952, and was appraised in the amount of $1,250. After the car was replevied it was sold to a dealer in Fremont and a certificate of title given for it. The record shows an application for certificate of title made by the plaintiff to the county clerk of Lancaster County on March 24, 1952, or nearly 30 days from the time the plaintiff filed the replevin action.

There are certain fundamental rules which govern actions in replevin which we deem advisable to set out at this point.

The burden is on the plaintiff in a replevin action to prove by a preponderance of the evidence that at the time of the commencement of the action he was the owner of the property sought to be replevied, that he was entitled to the immediate possession of it, and that the defendant wrongfully detained it. See, Stickell v. Haggerty, 158 Neb. 34, 62 N. W. 2d 107; Fitzsimons v. Frey, 153 Neb. 124, 43 N. W. 2d 531.

The burden is on the plaintiff in replevin to establish facts necessary for him to recover, and these must be shown to have existed at the time the action was commenced. See, Alliance Loan & Investment Co. v. Morgan, 154 Neb. 745, 49 N. W. 2d 593; Bank of Keystone v. Kayton, 155 Neb. 79, 50 N. W. 2d 511.

Any fact that transpires after the date of the institution of a replevin case is immaterial in the consideration and determination of the merits of the case. Alliance Loan & Investment Co. v. Morgan, *supra.*

The law requires that a plaintiff in a replevin case must recover on the strength of his right in or to the property and not upon any weakness of the interest of the defendant therein. See, Alliance Loan & Investment Co. v.

Morgan, *supra;* Bank of Keystone v. Kayton, *supra.*

An allegation of general ownership in an action in replevin is not supported by proof of special ownership. See Robinson v. Kilpatrick-Koch Dry Goods Co., 50 Neb. 795, 70 N. W. 378.

A plaintiff in replevin must prove the title as he pleads it. See, Suckstorf v. Butterfield, 54 Neb. 757, 74 N. W. 1076. See, also, Wilson v. City Nat. Bank, 51 Neb. 87, 70 N. W. 501.

The principal questions to be determined are: (1) Is the evidence sufficient to sustain the plaintiff's allegation of ownership as pleaded in the plaintiff's petition when the replevin action was instituted; and (2) did title to the automobile pass to the plaintiff as assignee upon the delivery of the certificate of title so assigned?

This appeal involves the act relating to title and transfers of motor vehicles which act is found in Chapter 60, article 1, R. R. S. 1943, sections 60-101 to 60-117, and also certain sections with reference to motor vehicle registration, Chapter 60, article 3, R. R. S. 1943, sections 60-301 to 60-344. Prior to our present statute with reference to the title of motor vehicles initially enacted in 1939 (Laws 1939, c. 81, p. 328), title to automobiles could be transferred between living persons only by compliance with sections 60-310 and 60-325, Comp. St. 1929, relative to such transfer. See, In re Estate of Wroth, 125 Neb. 832, 252 N. W. 322; Mackechnie v. Lyders, 134 Neb. 682, 279 N. W. 328; In re Estate of Nielsen, 135 Neb. 110, 280 N. W. 246. The 1939 act did not change section 60-310 of the Comp. St. 1929. However, by the Laws of 1947 (Laws 1947, c. 204, § 6, p. 669), it was changed to its present language which is: "Upon the transfer of ownership of any motor vehicle, its registration shall expire, and the person in whose name such vehicle is registered shall be required to observe the provisions of sections 60-101 to 60-117." Section 60-310, Comp. St. 1929, is now section 60-314, R. R. S. 1943.

Section 60-326, R. R. S. 1943, formerly section 60-325, Comp. St. 1929, provides in part: "The treasurers of the various counties shall be agents of the Department of Roads and Irrigation in such counties for the purpose of registering motor vehicles and for the granting of licenses to the applicants, subject to the requirements of sections 60-301 to 60-343, and in accordance with such rules and regulations as shall be imposed by the department, * * *."

It is apparent by the changes made in sections 60-310 and 60-325, Comp. St. 1929, it was the intention of the Legislature to make certain in the act relating to titles and transfers of motor vehicles, the only means whereby transfers and titles to motor vehicles could be made.

The pertinent sections of the statutes involved in this appeal are as follows: Section 60-104, R. R. S. 1943, provides in part: "No person, * * * shall sell or otherwise dispose of a motor vehicle, * * * without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser, * * *."

Section 60-105, R. R. S. 1943, provides in part: "No person, * * * acquiring a motor vehicle, * * * from the owner thereof, * * * shall acquire any right, title, claim, or interest in or to such motor vehicle, * * * until he shall have had issued to him a certificate of title to such motor vehicle, * * * or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for such motor vehicle, * * * for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, * * * sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this act."

This section of the statutes applies only to individuals such as purchasers.

Section 60-106, R. R. S. 1943, provides: "Application for a certificate of title shall be made upon a form prescribed by section 60-114, * * *. It shall be filed with the clerk of the county in which the applicant resides if the applicant is a resident of this state, or if not such a resident, in the county in which the transaction is consummated, and shall be accompanied by the fee prescribed in this act. If a certificate of title has previously been issued for such motor vehicle in this state, it shall be accompanied by such certificate of title duly assigned, unless otherwise provided for in this act. * * * The county clerk shall retain the evidence of title presented by the applicant and on which the certificate of title is issued. The county clerk shall use reasonable diligence in ascertaining whether or not the facts in such application are true by checking the application and documents accompanying the same with the records of motor vehicles in his office; and if satisfied that the applicant is the owner of such motor vehicle and that the application is in the proper form, the county clerk shall issue a certificate of title over his signature and sealed with his seal, but not otherwise. In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser, and in all other cases such certificates shall be obtained by the purchasers. In all cases of transfers of motor vehicles, the application for certificates of title shall be filed within three days after the delivery of such motor vehicles; Provided, licensed dealers need not apply for certificates of title for motor vehicles in stock or acquired for stock purposes, but upon transfer of the same they shall give the transferee a reassignment of the certificate of title on such motor vehicle, or an assignment of a manufacturer's or importer's certificate."

It will be observed by this section of the statutes that only licensed dealers need not apply for certificates of title for motor vehicles in stock or acquired for stock purposes. Section 60-320, R. R. S. 1943, also applies to dealers. See Bank of Keystone v. Kayton, *supra*. Other persons such as purchasers must acquire a certificate of title to an automobile under the law.

The purpose of the act relating to transfers and titles to motor vehicles is to provide a means of identifying motor vehicles, to ascertain the owners thereof, to prevent theft of motor vehicles, and to prevent fraud. See 60 C. J. S., Motor Vehicles, § 40, p. 160.

It is a fundamental rule of statutory construction that statutes that relate to the same matter or subject should be construed together for the purpose of learning and giving effect to the legislative intention.

Statutes in pari materia must be construed together, and the legislative intention apparent from the whole body of the enactment should be carried into effect. See Dawson County v. Clark, 58 Neb. 756, 79 N. W. 822.

Statutes in pari materia should be taken together and construed as if they were one enactment, and, if possible, effect given to every provision. See McQuiston v. Griffith, 128 Neb. 260, 258 N. W. 553.

In determining this appeal we consider and construe the above sections of the statute in pari materia.

We deem it advisable to cite Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913. This case determined the effect of the sections of the statute herein involved and the meaning thereof as the same relate to transfers and titles of motor vehicles. This was a replevin action. The plaintiff received an assignment of a certificate of title and a certificate of title had thereafter been issued to the plaintiff. The intervener had possession of the automobile as a purchaser, but never received the assignment of the certificate of title. We there held that the plaintiff, having obtained a certificate of title by complying with the statutory require-

ments, had title and ownership superior to any right of the intervener. In the instant case the plaintiff had, when the action was brought, only the assigned certificate of title from Anderson. We said in the above-cited case: "As stated in Crawford Finance Co. v. Derby, 63 Ohio App. 50, 25 N. E. 2d 306: 'On the other hand, from the whole scheme of the Certificate of Title Act, especially the sections quoted above, it is apparent that the Legislature intended to set up one and only one method by which liens on or titles to a motor vehicle could be acquired. To a purchaser, it makes a certificate of title issued by a clerk of courts (in this state county clerks) on a proper application, accompanied by the preceding certificate, either manufacturer's or owner's, the sine qua non to any right or title therein.' "

The court further said: "A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein."

In Snyder v. Lincoln, 156 Neb. 190, 55 N. W. 2d 614, this court held: "A certificate of title to a motor vehicle, issued pursuant to section 60-105, R. R. S. 1943, provides the exclusive method of conveying title to a motor vehicle, * * *." The court further said: "A certificate of title is essential to convey the title to an automobile, but it is not conclusive of ownership. It is simply the exclusive method provided by statute for the transfer of title to a motor vehicle."

In Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315, we held that a certificate of title of a motor vehicle is generally conclusive evidence in this state of the ownership of the vehicle. See, also, Loyal's Auto Exchange, Inc. v. Munch, *supra.*

In Loyal's Auto Exchange, Inc. v. Munch, *supra,* we quoted from Anderson v. Arnold-Strong Motor Co., 229 Mo. App. 1170, 88 S. W. 2d 419, as follows: " 'It is well settled that unless the certificate is assigned and passed to the buyer of the motor vehicle at the time of its de-

livery, the sale is absolutely void and no title to the vehicle passes.' [State ex rel. v. Cox, 306 Mo. 537, 268 S. W. 87.]"

Suffice it is to say that the above-cited case has no application here. The Missouri statute with reference to transfers and titles to motor vehicles is not like the Nebraska act governing such subject.

The plaintiff contends it was under no obligation to obtain a certificate of title or a new title until it obtained possession of the automobile in question, or after the action to replevin it was commenced, and that it is so provided in section 60-106, R. R. S. 1943. Apparently the plaintiff refers to the language in said section as follows: "In all cases of transfers of motor vehicles, the application for certificates of title shall be filed within three days after the delivery of such motor vehicles; * * *." We find nothing in section 60-106, R. R. S. 1943, that requires delivery of a motor vehicle to a purchaser before the purchaser can acquire title thereto as provided for by sections of the statute previously set out. See Loyal's Auto Exchange, Inc. v. Munch, *supra.* We find no language within said section to the effect that the plaintiff could not acquire a certificate of title to the motor vehicle in question until the same was delivered to it. The fact that the plaintiff instituted a replevin action claiming the right of possession of the automobile did not change any rights it had under the law to procure title to the automobile.

The plaintiff alleged in its petition that at the time the replevin action was instituted it was the owner of the 1950 Chevrolet automobile in question and entitled to the immediate possession thereof. The word "owner" means one who has the legal title or rightful title, whether the possessor or not. See Webster's New International Dictionary (2d ed.), Unabridged, p. 1745.

The word "own" means to have a good legal title; to hold as property; to have a legal or rightful title to; to

have; to possess. See Black's Law Dictionary (4th ed.), p. 1259.

Considering the sections of the statute above set out in pari materia, the authorities heretofore cited, and the record, we conclude that the plaintiff was not the owner of the automobile in question at the time it instituted this replevin action, and that the plaintiff failed in its burden of proof to establish its right of possession of the automobile in question. The trial court did not err as contended for by the plaintiff.

For the reasons given herein, the judgment of the district court is affirmed, the plaintiff to pay all costs.

AFFIRMED.

CHAPPELL, J., dissents.

SIMMONS, C. J.

I dissent.

A traded his car to B, a licensed dealer. A retained possession of the car. A made an incomplete assignment of his certificate and delivered it with a power of attorney to B to complete the assignment. Apparently it was never actually done. We held in Bank of Keystone v. Kayton, 155 Neb. 79, 50 N. W. 2d 511, that title passed from A to B.

Here C assigned his certificate and delivered it to D, together with the keys to the car. The car being stolen and its whereabouts unknown, it could not be delivered. The court holds that title did not pass from C to D. The only difference between the two cases is that B was a licensed dealer, and D was an insurer paying a contract loss. The court holds that these results are in accord with the "legislative intention." I disagree. As I see it, these two decisions can only be reconciled by reading into the provision of section 60-105, R. R. S. 1943, following the words "no person" the words "except a licensed dealer," so as to make it read "no person, except a licensed dealer * * * shall acquire * * *" etc. I know of no authority for such a judicial amendment of the law. The statutes negative such a construction.

Our present statutes with reference to the title of motor vehicles was initially enacted in 1939. Laws 1939, c. 81, p. 328. I agree with the court that prior to the enactment of our present statute, title to an automobile could be transferred between living persons only by compliance with sections 60-310 and 60-325, Comp. St., 1929, relative to such a transfer. In re Estate of Wroth, 125 Neb. 832, 252 N. W. 322; Mackechnie v. Lyders, 134 Neb. 682, 279 N. W. 328; In re Estate of Nielsen, 135 Neb. 110, 280 N. W. 246. Those decisions rested on the provision in section 60-325, Comp. St., 1929, that: "* * * upon the transfer of ownership of any motor vehicle the title shall not pass until the certificate of registration properly executed, shall be filed in the Department of Public Works as required in this article." The above decisions are consistent with the above-quoted provision.

A year after the filing of the opinion in In re Estate of Nielsen, *supra,* the Legislature in the 1939 act amended section 60-325, Comp. St., 1929, by striking out the above-quoted provision that title did not pass. Laws 1939, c. 81, § 15, p. 348. The court in Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913, quoted the provision of section 60-325, Comp. St., 1929, in its quote from In re Estate of Wroth, *supra.* The court did not point out there that the provision quoted had been repealed. The court now quotes section 60-326, R. R. S. 1943 (formerly section 60-325, Comp. St., 1929), and does not point out the repeal of the proviso. The court does not mention the amendment of section 60-325, Comp. St., 1929, although it does state that section 60-310, Comp. St., 1929, was not amended until 1947.

The Legislature not only repealed the provision prohibiting title passing but put no comparable provision in the 1939 act.

In Hurley v. Brotherhood of R. R. Trainmen, 147 Neb. 781, 25 N. W. 2d 29, we quoted, with approval, this rule from Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415: "In considering an amendatory or substituted

statute, it is proper to consider the provisions of the law which was repealed in connection with the law which takes its place, in order to ascertain the legislative intent, *and all provisions of the original statute which are not carried forward into or repeated in the new law are annulled by the repealing statute.*" (Emphasis supplied.)

The court does not explain the effect of the amendment repealing the proviso that title shall not pass, but ignores it.

Not only did the Legislature strike out the above language of the old law, but it made certain positive provisions that show a contrary intent to that which the court now announces.

It provided in section 60-104, R. R. S. 1943, that: "No person, * * * shall sell * * * a motor vehicle, * * * without delivering to the purchaser * * * a certificate of title *with such assignment* thereon as may be necessary *to show title in the purchaser,* * * *." In effect, the court construes this language to mean "as may be necessary to show a right to get a title in the purchaser." The language of the statute clearly imports title passing with the delivery of the assigned certificate, for otherwise how can the assignment show "title in the purchaser"?

Again in section 60-106, R. R. S. 1943, with reference to securing a certificate of title where, as here, a certificate had previously been issued, it provided that the assigned certificate should be presented to the county clerk. The act then requires the county clerk to be satisfied that the "applicant is the *owner* of such motor vehicle." The court, in effect, now construes this to mean that the county clerk shall be satisfied that the "applicant is entitled to become the owner of such motor vehicle." The court now says the applicant is not the "owner" at that time. It follows the county clerk cannot be "satisfied that the applicant is the owner."

The Legislature further provided in section 60-106,

R. R. S. 1943: "In all cases of transfers of motor vehicles, the application for certificates of title shall be filed within three days after the delivery of such motor vehicles; Provided, licensed dealers need not apply for certificates of title for motor vehicles in stock or acquired for stock purposes, but upon transfer of the same they shall give the transferee a reassignment of the certificate of title on such motor vehicle, or an assignment of a manufacturer's or importer's certificate."

This obviously relates to a transfer of ownership. The court now holds that ownership does not pass until a new certificate of title is had by the transferee; and that the transferor remains the owner until a new certificate of title is secured by the transferee (or for him if the transferor is a dealer), notwithstanding the fact that the transferor has delivered possession and assigned certificate of title to the transferee. The ownership is made to depend on, not what the seller does, but what the purchaser does after purchase, full payment, and delivery to him of the motor vehicle. Suppose the transferee does not apply within the three-day period, or never does apply for a new certificate of title. Under the court's holding, ownership remains in the transferor. Such the court holds to be the Legislature's intention. I would hold that the new certificate is evidence of title which the buyer had previously acquired by virtue of the assignment and transfer to him of the original certificate. The failure to apply for the new certificate within the period does not divest the rights of the purchaser. See, Crawford v. General Exchange Ins. Corporation (Mo. App.), 119 S. W. 2d 458; Wilkison v. Grugett, 223 Mo. App. 889, 20 S. W. 2d 936.

The court says that statutes in pari materia must be construed together. I agree. What statutes do the court "construe together"? Apparently reference is to the provision that licensed dealers need not apply for certificates of title for motor vehicles in stock or acquired for stock purposes (section 60-106, R. R. S. 1943); to the

provisions of section 60-320, R. R. S. 1943, to the effect that dealers "in lieu" of registering motor vehicles may, under certain circumstances, operate them under dealers' licenses; and to the provision in section 60-106, R. R. S. 1943, that: "In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser, and in all other cases such certificates shall be obtained by the purchasers." In the instant case the "in all other cases" provision is applicable.

I submit that the fact that *when selling*, the dealer must get the certificate for his buyer and, in the other instance, the buyer must get it himself "within three days" does not show a legislative intent that title passes at once in the first instance and does not pass in the second instance until a new certificate is issued in lieu of the assigned certificate. Had the Legislature so intended, it could have said so, as it did in the earlier act, which was repealed when this act was passed, as shown above. The court in effect now puts the repealed provision back into the act.

I am mindful of the provision of section 60-105, R. R. S. 1943, which provides: "No person, * * * acquiring a motor vehicle, * * * from the owner thereof, whether such owner be a manufacturer, importer, dealer or otherwise, shall acquire any right, title, claim, or interest in or to such motor vehicle, * * * until he shall have had issued to him a certificate of title to such motor vehicle, * * * or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for such motor vehicle, * * * for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, * * * sold or disposed of, or mortgaged or en-

cumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this act."

This section taken out of context and standing alone presents difficulties. When put into chronological context, and analyzed in relation to the legislative plan as evidenced by the whole act, the difficulties disappear. For the purpose of this analysis, I go to the original act, Laws 1939, c. 81, p. 328.

The act was a comprehensive one, to apply to motor vehicles required to be registered (with exceptions not important here). Section 1, page 329. By its title, it is an act relating to the ownership of motor vehicles "providing manner of *originating* title to motor vehicles by manufacturers and importers" and "prohibiting sale or transfer of motor vehicles *unless accompanied by assignment of certificate of title.*" (Emphasis supplied.) There, in the title to the act, is a legislative construction providing that on a sale or transfer, it be "accompanied by assignment of certificate of title." Nothing is said about a sale being prohibited unless and until a new certificate is issued to the purchaser.

Section 2, page 329 (now as amended section 60-103, R. R. S. 1943) required that "a new motor vehicle" delivered to a dealer for purposes of display and resale be accompanied by a manufacturer's or importer's certificate "with such assignments thereon as may be necessary to show *title in the purchaser.*" Section 3, page 329 (now as amended section 60-104, R. R. S. 1943), excepting transactions covered by section 2, provided that "no person" should sell or otherwise dispose of a motor vehicle without delivering a certificate of title with such assignments as "may be necessary to *show title in the purchaser.*" It further provided that no person should purchase, acquire, or "bring into this state" a motor vehicle "except for temporary use" unless he obtains a certificate of title as provided in the act.

The Legislature clearly provided that new motor ve-

hicles in the hands of a dealer must be accompanied by a manufacturer's certificate and other motor vehicles must be accompanied by a certificate of title issued in Nebraska. This also was necessary to make the vehicle eligible for "initial registration" in this state. See section 3, page 329 (now section 60-104, R. R. S. 1943). The Legislature required that Nebraska cars have Nebraska certificates of title. To enforce that intent and purpose, the Legislature enacted section 4, page 329 (now as amended section 60-105, R. R. S. 1943).

Consistent with that purpose, it was provided in section 5, page 330 (now section 60-106, R. R. S. 1943) that applications for a certificate of title should be accompanied (1) by a certificate of title, duly assigned, if one had previously been issued in this state; or (2) if no certificate of title had previously been issued in this state, then by a manufacturer's or importer's certificate; or (3) by a bill of sale or sworn statement of ownership; or (4) by a certificate of title or other evidence of ownership required by the state from which the motor vehicle was brought into this state. Upon any one of these four showings, the county clerk is required to find *"ownership" in the applicant.* In the same section, the Legislature further provided that a dealer selling to a general purchaser or user should obtain the certificate of title in the name of the purchaser. Why? Obviously because as to a new motor vehicle title prior thereto was not evidenced by a certificate of title but by a manufacturer's or importer's certificate. As to all cars sold by a dealer, it prevents fraud on the part of licensed dealers. In all cases the application for certificate of title was to be filed "within three days after the delivery." And by the provision of section 3, page 329 (now section 60-104, R. R. S. 1943) the purchaser (except from a dealer) is required to have had delivered to him a certificate of title with "such assignment thereon as may be necessary to show title in the purchaser." Obviously the seller (other than a dealer) of a car which

does not have a certificate of title issued in this state must first secure one in his name in order to make a sale in compliance with the act.

I would construe the provisions of section 60-105, R. R. S. 1943, to be applicable to the "initial" and originating title in Nebraska. So construed, it is consistent with other provisions of the act. As construed by the court, it puts provisions of the act in conflict and creates repugnancy.

Section 60-105, R. R. S. 1943, was the law when the court decided Bank of Keystone v. Kayton, *supra*. The court does not recede from the holding in that case that title passed, although no new certificate of title had been secured.

That section was also the law when the court decided Loyal's Auto Exchange, Inc. v. Munch, *supra*. In that case plaintiff had received an assignment of a certificate of title and a certificate of title had thereafter been issued to plaintiff. The intervener had possession without a certificate. The question here presented was not the issue in the Loyal's Auto Exchange case. However, there the court approved the following from Anderson v. Arnold-Strong Motor Co., 229 Mo. App. 1170, 88 S. W. 2d 419: "It is well settled that unless the certificate is assigned and passed to the buyer of the motor vehicle at the time of its delivery, the sale is absolutely void and no title to the vehicle passes."

Again from the decision in In re Estate of Wroth, *supra,* the court quoted as "particularly applicable" the following: "No title passes unless certificate is assigned buyer at time of delivering motor vehicle * * *." While these rules may come from other states where the legislation is not like ours, as the court now points out, the fact remains that this court quoted those rules in construing our statute.

The court refers to our decision in Snyder v. Lincoln, 156 Neb. 190, 55 N. W. 2d 614.

The court quotes: "A certificate of title is essential

to convey the title of an automobile, *but it is not conclusive of ownership.*" (Emphasis supplied.)

Not quoted by the court are these two sentences which precede the above quote. Referring to the Loyal's Auto Exchange case we said: "We did not say that the possession of a certificate of title was an absolute muniment of title. A thief with a certificate of title to a stolen automobile does not divest the owner of his right to take it wherever he can find it."

This court is committed to the doctrine that the Uniform Acts are to be construed so as to make uniform the laws of those states which have enacted similar legislation. Bainter v. Appel, 124 Neb. 40, 245 N. W. 16; Behrens v. State, 140 Neb. 671, 1 N. W. 2d 289; Krepcik v. Interstate Transit Lines, 154 Neb. 671, 48 N. W. 2d 839.

I do not contend that our act has been classified as a Uniform Act, yet the reason for the rule applies here. At least in Florida (1 Florida Statutes. 1953. § 319.22(1), p. 1198), Idaho (9 Idaho Code, § 49-404, p. 51), and Ohio (4A Page's Ohio General Code, § 6290-4, p. 590), legislation similar to our section 60-105, R. R. S. 1943, has been enacted. For all practical purposes our statutes, as far as we are concerned here, are exactly like the Code of Ohio which was passed by that state in 1937. See Laws of Ohio 1937-38, p. 373. Our act was obviously copied from the Ohio act, changed only in detail as to operation.

In testing the constitutionality of a part of this provision in the Loyal's Auto Exchange case, the court relied heavily upon decisions of the Ohio courts. In spite of the fact that the Supreme Court of Ohio has spoken on the matter, since our opinion in the Loyal's Auto Exchange case, the court again relies here on a decision of an intermediate appeals court of Ohio.

In Garlick v. McFarland, 159 Ohio St. 539, 113 N. E. 2d 92, decided June 3, 1953, the court quotes their stat-

utes at length. To copy the quote would be in effect to copy our statutes.

The court there reviewed their previous decisions. They will not be referred to or discussed here, as they are available in the cited case.

After analyzing its statutes and decisions, the Supreme Court of Ohio announced the rule: "* * * where endorsement and delivery of a certificate of title for an automobile are made, title passes even though there is a failure on the part of the recipient to secure the issuance of a new certificate in his name." See, also, Johnson v. Bennion, 70 Idaho 33, 211 P. 2d 148.

The above quote is this case. If this transaction had occurred in Ohio, plaintiff would be held to be the owner of the automobile involved here. Occurring in Nebraska under exactly the same circumstances and same statutes, plaintiff is held not to be the owner of the automobile. This is a commercial transaction. It has none of the elements of a local question where there should be a local policy. The court contributes not to uniformity, but to confusion. Consistent with my analysis of the statute; our decision in Bank of Keystone v. Kayton, supra; and in the interest of uniform construction of laws dealing with commercial problems, I would follow the Supreme Court of Ohio and hold that title passed here to the plaintiff and that its proof sustained its allegation of ownership. I would reverse the judgment and remand the cause with directions to enter judgment for the plaintiff.

I am authorized to say that YEAGER, J., joins in this dissent.