REQUESTED BY: Arlyss E. Brown, General Counsel, Department of Public Institutions
Is the cost of care for individuals committed to state hospitals after being acquitted on the grounds of insanity under Neb.Rev.Stat. §§ 29-3701 through 29-3706 (Cum.Supp. 1982) handled the same as for patients who have been civilly committed?
Yes.
Prior to the passage of LB 213 in 1981, anyone acquitted of a crime by reason of insanity could only be involuntarily committed to a state institution by a Mental Health Board. Those commitments were conducted pursuant to the guidelines established for involuntary civil commitments in Neb.Rev.Stat. § 83-1001, et seq. (Reissue 1981). With the passage of LB 213, which became Neb.Rev.Stat. §§ 29-3701
through 29-3706 (Cum.Supp. 1982), an additional method of involuntary commitment was created for those individuals acquitted by reason of insanity. The major change in involuntary commitments made by LB 213 is that the Court, rather than the Mental Health Board, conducts the hearing, makes the decision whether or not to commit an individual, and provides the follow up supervision through periodic review of the case.
Prior to the passage of LB 213, liability for those persons acquitted by reason of insanity and then committed to a state institution by a Mental Health Board was determined under the ability to pay statutes. These statutes, Neb.Rev.Stat. §§ 83-363 through 83-380 (Reissue 1981), provide for the determination and billing of the cost of patient care in state hospitals. Specifically, § 83-364
provides for the liability of patients and relatives `Whenany person is admitted to a state institution or receives treatment prescribed by an institution following release or without being admitted as a resident patient, . . .' (Emphasis added). The exception to this procedure, noted in the same section, is for state penal and state juvenile correction institution transferees still serving sentence or commitment time.
`In enacting a statute, the Legislature must be presumed to have had in mind all previous legislation upon the subject. In the construction of a statute, courts must consider the preexisting law and any other laws relating to the same subject.' Roy v. Bladen School Dist. No. R-31,165 Neb. 170, 177, 84 N.W.2d 119, 123 (1957). It must, therefore, be presumed that the Legislature was aware, at the time of the passage of LB 213, of the ability to pay statutes in relation to all commitments to state institutions with the exceptions noted above.
Additionally, `Statutes in pari materia should be taken together and construed as if they were one enactment, and, if possible, effect given to every provision.' State FarmMutual Auto Insurance Co. v. Drawbaugh, 159 Neb. 149, 156,65 N.W.2d 542, 546 (1954). If all of the statutes relating to involuntary commitments to state institutions are to be taken in pari materia, then those statutes relating to ability to pay must be considered together with the statutes relating to involuntary commitment following a verdict of acquittal by reason of insanity as well as with the civil commitment statutes. Since the Legislature did not provide specifically for liability of those persons committed after an acquittal by reason of insanity, those statutes already in existence on the subject of the liability of persons committed to state institutions would be controlling.
We conclude that the cost of care for individuals committed to state hospitals after being acquitted on the grounds of insanity should be handled the same as the cost of care for patients who have been civilly committed. Thus, Neb.Rev.Stat. §§ 83-363 through 83-380 (Reissue 1981) should be used when determining the cost of care and the liability for said cost.
Very truly yours, PAUL L. DOUGLAS Attorney General Linda L. Willard Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General