EBER M. STEEVES ET AL., APPELLANTS, V. STANLEY J. NISPEL
ET AL.: JOHN HALLQUIST, APPELLEE.
273 N. W. 50

FILED APRIL 16, 1937. No. 29803.

598

 

*Heaton & Heaton, R. L. Smith* and *George H. Risser*, for appellants.

*Rolfson & Hendricks* and *B. E. Hendricks, contra.*

Heard before ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and RYAN and KROGER, District Judges.

EBERLY, J.

This is an action in equity instituted by Eber M. Steeves and Clinton D. Dickson against Stanley J. Nispel, Carl I. Hallquist and Josie M. Hallquist, his wife, and John Hallquist, et al., defendants, to foreclose a certain real estate mortgage securing the repayment of $6,000 and interest, dated July 1, 1917, executed by Stanley J. Nispel, single, which, by its terms, originally matured July 1, 1922. This action was commenced on March 14, 1935. The petition was in the usual form, but contained additional averments to the effect that the maturity of the original writing obligatory had been extended by the terms of three, successive, unrecorded, extension agreements in writing, in due form, each duly executed by the then owner of the mortgaged premises, respectively, on May 26, 1922, for the period of two years from the date of original maturity; on August 30, 1924, for the period of five years from the date to which said maturity date had been extended by the agreement of May 26, 1922; and on or about July 1, 1929, for the period of five years from that date. Each of these extension agreements in writing, together with the unpaid interest coupons attached thereto, were set out in the petition verbatim, together with the condition of the original mortgage. A breach of the terms of these writings was alleged in proper form, the pleading closing by the prayer for usual relief incident to foreclosure actions. All defendants save and except John Hallquist defaulted. The last-named party, who is the father of Carl I. Hallquist, in his pleading denied generally the allegations contained in the petition; alleged

affirmatively that plaintiff's action was not commenced within the time limited by section 20-202, Comp. St. 1929, and as to the answering defendant was barred thereby; and by cross-petition alleged the ownership of a mortgage covering the premises in suit securing the payment of $9,830, evidenced by a promissory note in writing bearing interest at 5 per cent. per annum, which note and mortgage securing the same had been on August 27, 1932, for a valuable consideration, duly executed and delivered to said John Hallquist by Carl I. Hallquist and wife, and on said date duly recorded as provided by law. This defendant further alleged that his mortgage lien was senior and superior to the lien of plaintiffs' mortgage, and prayed for a foreclosure of his mortgage, and that the lien thereof be adjudged senior and superior to the lien of plaintiffs' mortgage.

Issues were joined on these allegations, and, upon trial to the court, judgment was entered for the defendant as by him prayed. From the order of the trial court overruling their motion for a new trial, plaintiffs appeal.

No serious conflict is disclosed by the evidence as to the main issues involved. To summarize the proof, it may be said that on and prior to July 1, 1917, defendant Stanley J. Nispel, a single man, was the owner of the north half of section thirty-four, township thirteen, range forty-three west of the 6th P. M., in Deuel county, Nebraska. On the day mentioned he made and delivered to Samuel H. Steeves, for a valuable consideration, his promissory note for the sum of $6,000 with interest at 6 per cent. from date, payable to Samuel H. Steeves on July 1, 1922; and that contemporaneously therewith Nispel, to secure the payment of said note, executed and delivered to the payee thereof his real estate mortgage, mortgaging the premises above described, which was duly recorded in the office of the register of deeds of Deuel county as by law provided. This mortgage, and indebtedness secured thereby, was thereafter duly assigned to plaintiffs, who are now the owners thereof. Thereafter Stanley J. Nispel conveyed the prem-

ises above described to one James Gammell, who, in turn, on June 26, 1918, conveyed this real estate to one Carl Buehler. Said Buehler and his wife, Leona Buehler, in consideration of the extension of time of payment of the original $6,000 note and mortgage, executed and delivered to the then owner of the mortgage indebtedness their extension agreement, in writing, and thereby extended the maturity date of the mortgage indebtedness from July 1, 1922, to July 1, 1924. Thereafter said Carl Buehler and wife, Leona Buehler, entered into their second extension agreement, in writing,. with the then owner of the mortgage indebtedness, evidenced by the note and mortgage of July 1, 1917, by the terms of which the maturity of said indebtedness was again extended from July 1, 1924, to July 1, 1929. The premises herein described were thereafter duly conveyed by Carl Buehler and wife to Carl I. Hallquist, who since said conveyance has been, and is now, the owner in fee simple thereof. On or about July 1, 1929, Carl I. Hallquist and his wife made, executed and delivered to plaintiffs herein an extension agreement in writing, with interest coupons attached, wherein Carl I. Hallquist and his wife, in consideration of the extension of the time for payment of the note of $6,000 for a term of five years from July 1, 1929, agreed to pay interest on said sum from July 1, 1929, as evidenced by interest coupons attached to this extension agreement. This extension agreement, omitting the interest coupons attached thereto and forming a part thereof, is in the following form:

"Extension Agreement and Coupons.

"Chappell, Nebraska, July 1st, 1929.

"The undersigned hereby covenant that Carl I. Hallquist, the legal owner of the premises conveyed to Dickson and Steeves, mortgagees, by a mortgage deed dated July 2d, 1917, and recorded in book 15 at page 404 of the mortgage records of Deuel county, Nebraska, made by Stanley J. Nispel, which mortgage deed was given to secure the payment of a note or bond for the sum of $6,000 (of which amount none has been paid), payable July 2d, 1922, to the

order of Samuel H. Steeves, upon which note or bond there remains unpaid the sum of $6,000, of principal money, and in consideration of the extension of the time for the payment thereof for the term of five years, hereby agree to pay interest upon said principal sum from the day whereon the same, by the terms of said note or bond becomes due, at the rate of 7 per cent. per annum, payable annually, for and during said term of extension according to the tenor and effect of the extension coupons hereto attached; both principal and interest to be paid, when due, at Panama, Nebraska, and in case of default in payment of any of said extension coupons, or in case of nonpayment of taxes or breach of any of the covenants contained in said mortgage deed, it shall be optional with grantee or assigns to declaré said principal sum immediately due and payable.

"I further agree to pay all taxes levied upon this mortgage or the note which this mortgage is given to secure, before the same becomes delinquent. The grantor is given the privilege of paying $100 or any multiple thereof, on any interest paying date.

"Witness ——————.

"Carl I. Hallquist
"Josie M. Hallquist."

The two previous extension agreements were executed upon the same form of blank, each in the presence of a witness who affixed his signature thereto, evidencing that fact; and these two previous extension agreements embody identical terms. The third extension agreement, above quoted, contained the same terms, save and except that the words, "the grantor is given the privilege of paying $100 or any multiple thereof, on any interest paying date," are added. To each of these extension agreements, interest coupons covering the period of the extension provided for were executed by the then owners of the mortgaged land and formed a part thereof. None of these extension agreements was acknowledged before an officer possessing the requisite authority to take acknowledgments, and interest accruing by the terms of these extension agreements and

evidenced by coupon notes attached thereto was paid up to and including the interest falling due on July 1, 1931. None of the extension agreements was recorded prior to August 27, 1932, the date of defendant John Hallquist's mortgage. The original mortgage given on July 1, 1917, or a sworn copy thereof, was not refiled in the office of the recorder of deeds of Deuel county, Nebraska.

The evidence also discloses that defendant Carl I. Hallquist purchased this land for $14,000 in 1929 (March settlement). Defendant John Hallquist, father of Carl I. Hallquist, was at that time informed of the existence of the unpaid mortgage of $6,000 then on the land, and that this purchase price of $14,000 was met by a deduction of the $6,000 mortgage and the payment of $8,000 in cash. The father, John Hallquist, loaned his son, Carl I. Hallquist, $4,000 which was used to make up the $8,000 cash paid on the purchase price. The evidence is direct and positive that the Dickson and Steeves mortgage of $6,000, now in suit, was what was referred to in the mortgage of $4,000, which secured this loan of that amount, given by Carl I. Hallquist and wife to his father, John Hallquist, under date of March 4, 1929, upon the same lands, by the employment of the following words in such mortgage, viz.: "This mortgage is given subject to a mortgage for $6,000 in favor of Samuel H. Steeves."

Therefore, it appears without question that on March 4, 1929, defendant John Hallquist had actual knowledge of the unpaid mortgage of $6,000 in suit, and that his son had received the benefit of a deduction thereof from the agreed purchase price of the lands the son had purchased.

In this connection, the following testimony by Carl I. Hallquist is also for consideration: "Q. It has been stipulated that on July 1, 1929, you gave to plaintiffs here, Steeves and Dickson, an extension agreement, extending the time of payments on this mortgage, and that also you have paid interest up to July 1st of 1931. Did you ever discuss that matter with your father, John Hallquist? A. Oh, I have an idea that I told him about it, but I don't know

whether I discussed it or not. Mr. Hendricks (John Hallquist's attorney) : If you remember, say you remember, and if you don't, say, you don't remember. A. No; I don't remember that it was discussed and taken up in a discussion."

Carl I. Hallquist testified that he had borrowed $5,000 on his "home place;" that it was on a second mortgage; that he had also borrowed $4,000 from his father on the premises here in suit which was likewise a second mortgage. Both mortgages were due when the mortgage to his father for $9,830 was executed in 1932.

Carl .I. Hallquist's explanation of the 1932 mortgage given to his father is that on August 27, 1932, he and his wife executed to his father a new note of $9,830, and a mortgage securing the same covering the half section in suit. In arriving at this sum, the $4,000 and the interest accrued thereon, secured by the mortgage of 1929 owned by his father, were added to the $5,000 note and accrued interest thereon, which had its origin in 1915 and was secured by a second mortgage to his father on his "home place." The new mortgage of August 27, 1932, covered the lands here in suit, and was made after he had inspected the records in Deuel county, Nebraska, and ascertained that the $6,000 mortgage of plaintiffs "was outlawed."

He also testified: "Q. The mortgage that you gave him on August 27th of 1932? A. Yes, sir. Q. Had you previously discussed with your father about giving him a mortgage on this real estate? A. No. Q. You hadn't discussed it with him? A. No. * * * Q. Did you ever talk with any one about waiting until after July 1st of 1932 to give your father another mortgage? A. No, sir. Q. You hadn't? What were the facts in your mind, or the knowledge that you had that caused you to believe that another mortgage on this half section would be better security? A. Well, because the $6,000 was outlawed. Q. Was outlawed? A. Yes, sir. * * * Q. Did you say anything to him (John Hallquist) about the Steeves mortgage, the mortgage that is under foreclosure here? A. I told him what I found on the records.

Q. You told him what you found on the records? A. Yes, sir."

John Hallquist did not appear as a witness or testify in this case. It is clear from the foregoing that he was not only put on notice as to the existence of plaintiffs' $6,000 mortgage, but must be deemed to have had actual knowledge that it was unpaid, that it had been extended and interest paid thereon at least to July 1, 1929, and that it was undischarged of record when the mortgage of 1932 was delivered to him.

Mortgage extension agreements are instrumentalities of commerce, and their legal incidents are established with unanimity in many jurisdictions.

In 41 C. J. 808, the following appears:

"An agreement by a mortgagee to extend the time for payment of the debt secured by a mortgage, whether indorsed on the instrument or otherwise evidenced, will continue the lien of the mortgage and all his rights and remedies thereunder for the new period. Such agreement may be made without the formality of a sealed instrument; it may be made out by a mere parol promise, unless otherwise provided by statute; but in any case it must be clearly shown and not left to mere inference or conjecture, and it must be supported by a sufficient consideration. But these facts being established, the agreement will prevent the mortgagee from taking proceedings to enforce the mortgage before the end of the extended period. The mortgage is not discharged, although the extension of time is accompanied by or coupled with an increase of the rate of interest. The mere extension of the time for the payment of a mortgage debt does not waive the other terms of the mortgage, such as an agreement by the mortgagor to pay the taxes."

In *Eby v. Ryan*, 22 Neb. 470, 35 N. W. 225, which, among other things, involved the rights of third parties to an extension agreement (including the grantee of the mortgaged premises), Reese, J., in delivering the opinion of this court, says in part:

"It is not contended, nor could it be, that there was not sufficient consideration to sustain the agreement to extend the time of the maturity of the note and mortgage. The time of payment being extended, the right to foreclose is suspended until the expiration of the extended term, unless default be thereafter made. The extension of the time of payment has the effect in equity of modifying the original condition of the mortgage to the same extent as if the terms of the new agreement were incorporated into the condition. *Insurance Co. v. Bonnell,* 35 Ohio St. 365. It follows that, if defendant in error had the right to foreclose the mortgage, it existed by virtue of some default occurring subsequent to the agreement for extension."

Therefore, it is obvious that the three mortgage extension agreements involved in the present proceeding were valid instruments, binding upon the parties and those to whom notice or knowledge was imputed. In fact, the actual, effective, subsisting mortgage in suit, in equity, was formed of two instruments, viz., the original mortgage of 1917 and the extension as to which no cause of action ever arose, or under the facts could have arisen, until 1931.

The provisions of chapter 76, art. 2, Comp. St. 1929, which include our recording act, appear to be involved in the present case. Under such provisions all mortgages are required to be recorded and shall take effect and be in force from and after the time of delivering the same to the register of deeds for record, and not before, as to all creditors and subsequent purchasers in good faith. Comp. St. 1929, sec. 76-218.

A subsequent mortgagee is a "subsequent purchaser" within the meaning of the last-named section. *Dorr v. Meyer,* 51 Neb. 94, 70 N. W. 543. But we have also announced the rule that actual knowledge of the existence of a real estate mortgage is as binding as constructive notice thereof supplied by the duly recorded instrument. *Bradford v. Anderson,* 60 Neb. 368, 83 N. W. 173; *Gabel Lumber Co. v. West,* 95 Neb. 394, 145 N. W. 849; *Mulligan v. Snavely,* 117 Neb. 765, 223 N. W. 8. In the instant case the exten-

sion agreements involved were not recorded, and were not eligible to record. Comp. St. 1929, sec. 76-219. However, one with actual notice is not affected by failure to record. *National Mutual Bldg. & Loan Ass'n v. Blair*, 98 Va. 490, 36 S. E. 513.

This court has held that the recording acts, and not the law merchant, determine the rights of an assignee of mortgage notes, as to and in land mortgaged to secure the payment thereof. *First Nat. Bank of Falls City v. Edgar*, 65 Neb. 340, 91 N. W. 404.

On the state of facts before us, appellee contends that after ten years from the date of the maturity of the mortgage, unless within said period the mortgage is refiled for record, the right of action for foreclosure is not only barred, but the lien thereof ceases absolutely, as to subsequent encumbrancers for value; that notice of the earlier mortgage is immaterial; and that the real estate mortgage of 1917 having never been refiled, as to appellee, the lien thereof is junior to his mortgage of 1932. In support of such contentions appellee relies on the provisions of section 20-202, Comp. St. 1929, and in particular that portion thereof first incorporated therein by chapter 64, Laws 1925, which first came into force and effect on April 1, 1925. Thus, we have presented for construction a remedial statute.

"In construing a remedial statute three things must be considered, viz.: The old law, the mischief, and the remedy." *Clother v. Maher*, 15 Neb. 1, 16 N. W. 902. See, also, *Harmon v. City of Omaha*, 17 Neb. 548, 23 N. W. 503.

But, "In order to ascertain the proper meaning of a statute, later as well as earlier legislation upon the same subject may be referred to. All existing acts should be considered, and a subsequent statute may often aid in the interpretation of a prior one." *Campbell v. Youngson*, 80 Neb. 322, 114 N. W. 415.

So too, all statutes in *pari materia* must be taken together and construed as if they were one law, and, if possible, effect be given to every provision. *Hendrix v. Rieman*, 6 Neb. 516; *State v. Babcock*, 21 Neb. 599, 33 N. W. 247;

*Dawson County v. Clark,* 58 Neb. 756, 79 N. W. 822; *Chicago, R. I. & P. R. Co. v. Zernecke,* 59 Neb. 689, 82 N. W. 26; *Logan County v. Carnahan,* 66 Neb. 685, 95 N. W. 812; *State v. Royse,* 71 Neb. 1, 98 N. W. 459; *State v. Omaha Elevator Co.,* 75 Neb. 637, 106 N. W. 979.

Previous to April 1, 1925, the limitation prescribed for civil actions of this nature was: "An action for the recovery of the title or possession of lands, tenements or heriditaments, or for the foreclosure of mortgages thereon, can only be brought within ten years after the cause of action shall have accrued." Comp. St. 1922, sec. 8507. In this connection, section 20-216, Comp. St. 1929, which has been retained unchanged since 1866, provides: "In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made in writing an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment, or promise." These two sections were before this court in *Teegarden v. Burton,* 62 Neb. 639, 87 N. W. 337, and the following principles were there announced:

"In determining the period of limitation in an action to foreclose a real estate mortgage given for the security of a promissory note, section 6 of the Code of Civil Procedure (now section 20-202, Comp. St. 1929) should be construed in connection with section 22 of such Code (now section 20-216, Comp. St. 1929)."

And, "Where, after the maturity of a note secured by a real estate mortgage, interest payments are made annually on such note, a right of action accrues on the mortgage at any time within ten years after the date of the last payment on said note."

See, also, *Gillilan v. Fletcher,* 80 Neb. 237, 114 N. W. 161; *McLaughlin v. Senne,* 78 Neb. 631, 111 N. W. 377.

In *McLaughlin v. Senne, supra,* the additional principle was also approved, viz.: "Ordinarily the owner of the equity of redemption has authority to bind the property by such

payment, and a payment by him on the mortgage debt before the statute has run is binding on the property, and tolls the statute as against a subsequent mortgagee with notice of the prior mortgage."

On principle, it is obvious that the clause, "an acknowledgment of an existing liability, debt, or claim, or any promise to pay the same shall have been made in writing," as employed in section 20-216, Comp. St. 1929, is equally potent to toll the statute, and in any such event "an action may be brought * * * within the period prescribed for the same, after such payment, acknowledgment, or promise." Such, indeed, was the old law as it existed prior to April 1, 1925.

In the consideration of section 20-202, Comp. St. 1929, as now amended, it will be noted that the title of the 1925 enactment is "An act to amend" certain definite sections of the Compiled Statutes of 1922. The body of this act may constitutionally accomplish no other purpose. The unquestioned rule in this jurisdiction is: "Where the title to a bill is to amend a particular section, no amendatory legislation not germane to the subject-matter of the original section proposed to be changed is permissible." *Armstrong v. Mayer,* 60 Neb. 423, 83 N. W. 401. See, also, *Preston v. Stover,* 70 Neb. 632, 97 N. W. 812; *Day v. Metropolitan Utilities District,* 115 Neb. 711, 214 N. W. 647.

In the original plan of our Code of Civil Procedure, section 6 of title II (now section 20-202, Comp. St. 1929) was devoted to a declaration of the statute of limitations on recovery of real estate; and the enforcement of mortgages was included. Section 22 of such title II (now section 20-216, Comp. St. 1929) was originally enacted exactly as it now appears. Obviously, the scope of such sections 6 and 22 would be correctly determined by a proper construction of both with reference to the text of each and the context of the original enactment in which both are included. It would seem that what was clearly allocated to section 22 as originally enacted would not be deemed germane to section 6 of our original Civil Code, and *vice versa.*

But this court will not determine an act unconstitutional unless necessary for the proper disposition of the case in which it arises. *Howarth v. Becker,* 131 Neb. 233, 267 N. W. 444. However, this court is committed to the doctrine, viz.:

"Repeals by implication are not favored, and a construction of a statute which, in effect, repeals another statute will not be adopted, unless such construction is made necessary by the evident intent of the legislature." *Schafer v. Schafer,* 71 Neb. 708, 99 N. W. 482. See, also, *State v. Harris,* 100 Neb. 745, 161 N. W. 253.

Reading the terms of the amendment of 1925 in the light of the restrictions imposed by the title of the legislative act which enacted it, and with proper regard for provisions of our statutes in *pari materia,* it is obvious that the only words thereof which might be deemed irreconcilable with, and repugnant to, any part of section 20-216, Comp. St. 1929, are the following: "Said period of ten years shall not be extended by nonresidence, legal disability, *partial payment, or acknowledgment of debt.*" (Italics ours.)

But we are here concerned with a written extension agreement, the terms of which constitute a promise to pay the indebtedness secured and evidenced by the note and mortgage in suit. The language of the 1925 amendment obviously does not include it, nor are the terms employed by this legislation repugnant to that portion of section 20-216, Comp. St. 1929, which, in effect, provides: "In any cause founded on contract, when * * * (as to) an existing liability, debt, or claim, * * * any promise to pay the same shall have been made in writing an action may be brought in such case within the period prescribed for the same, after such * * * promise." It follows that sections 20-202 and 20-216, Comp. St. 1929, and other cognate enactments, properly construed, sustain the cause of action of plaintiffs in the instant case, as against the contentions of defendant John Hallquist; that the lien of plaintiffs' mortgage is senior to the lien of the mortgage of that defendant; that the due enforcement of plaintiffs' note and mortgage in

suit as to all defendants is not barred by the statute of limitations. Thus, the trial court erred in adjudging the lien of plaintiffs' mortgage to be junior to the lien of the mortgage of defendant John Hallquist.

The judgment of the district court is, therefore, reversed and the cause remanded, with directions to enter a decree of foreclosure and sale in favor of plaintiffs, determining their lien to be senior and superior to the rights and claims of all the defendants.

REVERSED.