STATE OF NEBRASKA EX REL. CHARLES RETCHLESS,
APPELLANT, V. W. W. COOK, SR., ET AL., APPELLEES.

152 N. W. 2d 23

Filed June 23, 1967.    No. 36487.

Baumfalk, Dalke & Dowding, for appellant.

Arnold E. Wullschleger, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and NEWTON, JJ.

NEWTON, J.

This is an action brought to determine the eligibility of relator Charles Retchless to receive a fireman's pension from the city of Beatrice. Beatrice is a first-class city and respondents are the mayor and city councilmen of such city. The city refused to grant the requested pension. This action was then filed in the district court for Gage County, Nebraska, and after trial was had therein, the court directed the city officials to grant the requested pension. Motion for new trial was filed

by respondents. The motion was sustained and relator has appealed from the order granting a new trial.

The evidence is almost completely free of contradictions. It discloses that Charles Retchless was appointed a volunteer fireman of the city of Beatrice on December 22, 1942, and served continuously in that capacity until September 1965. Ordinance No. 7-101 of the city of Beatrice provides: "The Fire Department of the City of Beatrice shall consist of a minimum of six full-time paid firemen, including a chief of the Fire Department, one assistant chief and four other firemen, who shall be appointed by the Mayor of said city, with the consent of the council, after receiving recommendations from the Civil Service Commission, and who may be removed or suspended by him, for cause; provided additional members of said department may be appointed, and vacancies in the personnel may be filled, in accordance with rules of Civil Service Commission. Said Department shall also consist of such volunteer firemen as the Mayor may appoint upon the recommendation of the Chief, and upon confirmation by the council." Under this ordinance, it appears that two groups were considered a part of the Beatrice fire department. The first group was composed of the so-called "regular" or "paid" firemen who were full-time firemen under civil service, were forbidden to enter other employment, were appointed as such after making application, and passing civil service tests, on recommendation of the civil service commission, and with the approval of the city council. They are members of a local union called the Beatrice Fire Fighters Association which is affiliated with the state organization. They receive a fixed annual salary, payable monthly, must serve at such times and for such periods as are fixed by state statutes, are not permitted to leave the city even when off duty without reporting such absence in advance, and are compelled to answer calls even when off duty. The second group is comprised of the members of an association designated as the Volun-

teer Fire Department. Members of this group are not under civil service. They obtain membership by applying therefor and by vote of the members of the Volunteer Fire Department. If the vote is favorable, they are then recommended for appointment by the mayor, subject to approval by the city council. This group is a member of the State Volunteer Firemen's Association. The volunteers work with the regular or full-time Beatrice fire department and are subject to the direction of the officers thereof. All of the members hold other positions from which they obtain their livelihood. In the event of a fire, the members of the volunteer association are called or notified thereof but are not compelled to attend and, in practice, never do attend when working at their regular jobs. By agreement, this organization supplies one man each week to serve on night duty with the regular fire department membership from 6 p.m. to 6 a.m. Those undertaking such night duty do so on a 7-day basis. They are not required to accept night duty and many of them do not. The city compensates them in part for their services by paying them $1 per hour for each drill, $1 for the first hour on each call, 50¢ for each subsequent hour, and $25 per week for night duty. The members of this organization furnish their own uniforms, but are supplied with such accessories as coats, boots, and helmets by the city. This organization receives occupation taxes levied by the city under section 35-106, R. R. S. 1943. Relator was a member of this second group but never became a member of the first group.

The resignation of Charles Retchless as a volunteer fireman was accepted effective October 1, 1965, and at that time section 35-201, R. S. Supp., 1963, was in effect. This section provides in part as follows: "All cities of the first class having a paid fire department, * * * shall pension all firemen of the paid fire department, whenever such firemen shall have first served in such fire department for the period of twenty-one years and shall

elect to retire from active service and go upon the retired list; * * *."

The question presented is whether the term "firemen of the paid fire department" includes a person serving in the manner in which relator served, or is limited to regular, salaried, full-time firemen.

In connection with this situation, it may be well to point out that Chapter 35, article 3, R. S. Supp., 1963, prescribes hours of duty of firemen, but this article is applicable only to "firemen employed in the fire department of cities having paid fire departments." Also, Chapter 19, article 18, R. R. S. 1943, providing for civil service commissions, limits the application of such article to cities having a full paid fire or police department or a fire or police department having paid members. It further provides: "Full paid fire or police department or fire or police department having paid members means a fire or police department in which the officers and firemen are paid regularly by the city and devote their whole time to firefighting or law enforcement." § 19-1823, R. R. S. 1943.

" 'In construing a statute, the court must look to the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.' " Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240.

" 'All statutes relating to the same subject should be construed and considered together for the purpose of giving effect to the legislative intention. * * * All statutes in pari materia must be considered together and construed as if they were one law, and, if possible, effect given to each provision.' " Sun Ins. Co. v. Aetna Ins. Co., 169 Neb. 94, 98 N. W. 2d 692.

In recent years various types of pensions have been generally adopted by business and industrial concerns as well as by national, state, and municipal governments.

In most instances, not only the agency which pays the pension, but also the beneficiaries thereof, contribute to the establishment of a fund for the payment of the pension. These pensions are in the nature of "retirement pay" and are generally intended to provide, at least in part, for the livelihood of the recipient after retirement. In this respect, they supplement the social security program. In practice, generally speaking, these pension plans can be participated in only to the extent that such participation has been earned. In the case of public employees who are required to devote their full time to the positions which they hold, they can derive such retirement pay or pensions only from the positions held by them as such public employees. In the case of a part-time public employee whose principal occupation or job is in some other line of endeavor, he may derive such pension or retirement pay in connection with his principal occupation and thus acquire the same benefits that a full-time public employee enjoys under plans such as are set forth in section 35-201, R. S. Supp., 1963. Was it the intention of the Legislature to provide a pension plan for employees who are not otherwise so provided for; or, was it the intention to make it possible for one who, in pursuit of his full-time or basic occupation, became eligible for a pension from the concern for which he worked to also work part-time as a public employee and thus become entitled to a second pension from the governmental unit of which he was a part-time employee? If the latter theory is adopted, it is conceivable that an individual who holds several part-time positions might become entitled to multiple pensions from the governmental agencies for which such services were performed. For example, under the statute in question, such a man might, by working part-time with the fire department and part-time with the police department, become entitled to separate pensions for both services.

The term "paid fire department" has not been interpreted by many other jurisdictions. In the case of Con-

tinental Hose Co. v. City of Fargo, 17 N. D. 5, 114 N. W. 834, the court ruled that a fire department which did have some full-time salaried firemen was a "paid fire department" and then by dictum, which was not pertinent to a decision in the case, intimated that part-time firemen paid on a nominal basis were paid firemen. There are, however, two cases which are almost directly in point with the present case in which statutes similar to the Nebraska statute were construed.

In the case of Seavert v. Cooper, 187 Iowa 1109, 175 N. W. 19, the court stated: "The obvious purpose of the statute is to provide a benefit to firemen who have regularly devoted at least 22 years to the service of the public, to the exclusion of other employment. Great efficiency is required of men in well-organized and equipped fire departments, and this is acquired by experience, drill, and constant devotion to the service. It was not intended that men pursuing other vocations or employment, who are in no sense dependent upon the nominal compensation usually paid, if any, by fire departments consisting of business and professional men and citizens generally, who have united in an organization for the common good and protection of all, should be paid a pension when they have continued in such capacity for 22 years."

In the case of State ex rel. McLaughlin v. Morris, 128 W. Va. 456, 37 S. E. 2d 85, it was stated: "If a statute is without ambiguity and the legislative intent is plain, there is no occasion to construe the statute; but where, as here, a literal application of the language used in the statute would lead to an absurd result, it is our duty to construe the statute so as to avoid such result and adopt a reasonable construction. * * * Applying the foregoing principles, we are unable to attribute to the Legislature an intent to provide a civil service commission for municipalities wherein the officers of an organized fire department are paid nominal salaries and all other members of such department are compensated on an

hourly basis for services actually rendered. If the literal words of the statute should be applied, any municipality in the State that pays the personnel of its fire department any sum whatsoever would be compelled to establish a civil service commission as provided in Section 2, Chapter 60, *id.* To so construe and apply the statute would lead to an absurd result not within the legislative intent and purpose. The provisions of Chapter 60 are intended to provide a civil service commission for the appointment, promotion and removal of firemen, whose only vocation is fire fighting, and for which such persons are paid substantial salaries. The provisions of said chapter do not apply to municipalities having fire departments in which the services of the officers and members are incidental to their regular vocations. It is not to be supposed that the public has more than a passing interest in the proficiency and tenure of public employees whose employment is incidental and occasional."

Consideration of the objects sought to be achieved by the Legislature in section 35-201, R. S. Supp., 1963, and of other statutes on the same general subject, including the definition of a full paid fire department as set out in section 19-1823, R. R. S. 1943, and of the reasoning set forth in the Iowa and West Virginia cases above cited, leads us to the conclusion that relator was not a fireman of a "paid fire department" and is not entitled to a pension.

The order of the district court granting a new trial is correct and should be affirmed.

AFFIRMED.