INSURANCE COMPANY OF NORTH AMERICA, A CORPORATION, APPELLANT, v. COUNTY OF HALL, A BODY POLITIC AND CORPORATE, APPELLEE.

198 N. W. 2d 490

Filed June 16, 1972. No. 38136.

Luebs, Tracy, Huebner & Dowding, James A. Beltzer, and D. Steven Leininger, for appellant.

Sam Grimminger and Robert Paulick, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

A house owned by the defendant was completely destroyed by fire. Pursuant to section 44-501, R. R. S. 1943, the policy insured the dwelling "to the extent of the actual cash value of the property at the time of the loss," the "amount of insurance" written in the policy was in the sum of $8,500. Section 44-380, R. R. S. 1943, provides: "* * * the amount of the insurance written on such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages." The question involved is whether the insured may recover the full face value of the policy in the sum of $8,500 or only the actual cash value of the property at the time of the loss. The district court held that the insured could recover the full face amount in the sum of $8,500. We reverse the judgment of the district court.

Section 44-380, R. R. S. 1943, requires a "valued" policy in which the face amount of the insurance becomes liquidated damages and is recoverable irrespective of the actual value of the loss. Section 44-501, R. R. S. 1943, on the other hand, incorporates the provisions of the 1943 Standard Fire Insurance Policy of the State of New York, the provision in the insurance contract here, and requires an "open" policy providing recovery of the actual value of the loss, and the amount of the insurance designated in the policy being a limitation on recovery. Borden v. General Insurance Co., 157 Neb. 98, 59 N. W. 2d 141 (1953). As a matter of original analysis and on authority, there is a direct conflict between the two statutory provisions. Borden v. General Insurance Co., *supra;* State ex rel. Martin v. Howard, 96 Neb. 278, 147 N. W. 689 (1914); Fadanelli v. National Security Fire Ins. Co., 113 Neb. 830, 205 N. W. 642 (1925). Prior to 1951, section 44-501, R. S. 1943, read

in part as follows: "No fire insurance company shall issue any fire insurance policy covering any property or interest therein in this state other than on a form prescribed by the Department of Insurance *as nearly as practicable* in the form known as the New York standard as adopted by the state in the year 1913 * * *." (Emphasis supplied.) The words "as nearly as practicable" in the pre-1951 statute were seized upon in State ex rel. Martin v. Howard, *supra,* and Fadanelli v. National Security Fire Ins. Co., *supra,* to reconcile the two statutes. Section 44-501, R. R. S. 1943, in its original context, was adopted in 1913, and in 1914 this court in State ex rel. Martin v. Howard, *supra,* stated as follows: "The act which we are now considering consists of nearly 200 sections. Scattered throughout there are sections which are inconsistent with the New York standard form, such as * * * the provision in Section 74 providing for valued policies." That case also stated: "The only matter in which any discretion in this regard is left to the board is that the form it is required to prepare shall be 'as nearly as practicable in a form known as the New York standard, as now or may hereafter be constituted.' This is an exceedingly narrow limitation which was no doubt inserted in order that the form of the New York policy might be modified so as to conform to a number of other provisions in the act which would be inconsistent with it if copied in its original form." In 1925 this court in Fadanelli v. National Security Fire Ins. Co., *supra,* again ruled on the question as follows: " 'We are of the opinion that it was the intention of the legislature that the New York form should be adopted as the basis of the insurance contract, and that the words "as nearly as practicable" should be construed to mean as nearly as practicable considering the other provisions contained in the insurance code which in anywise are inconsistent with or modify the provisions of the New York standard form of contract.' "

See, also, Mayfield v. North River Ins. Co., 122 Neb. 63, 239 N. W. 197 (1931).

This reconciliation was eliminated by the Legislature in 1951 when it enacted a new version of section 44-501, R. R. S. 1943. The new section, as amended in 1951, provides: "No policy or contract of fire and lightning insurance, including a renewal thereof, shall be made, issued, used or delivered by any insurer or by any agent or representative thereof, on property within this state other than such as *shall conform in all particulars* as to blanks, size of type, *context, provisions, agreements and conditions* with the 1943 Standard Fire Insurance Policy of the State of New York, a copy of which shall be filed in the office of the Director of Insurance as standard policy for this state, *and no other or different provision, agreement, condition or clause shall in any manner be made a part of such contract* or policy or be endorsed thereon or delivered therewith except as provided in subsections (1) to (9) of this section." (Emphasis supplied.)

Extended analysis is not indicated. The intent of the Legislature is abundantly clear. The holdings of Howard and Fadanelli were destroyed with the elimination of the words "as nearly as practicable." In this new amendment and act not only were these words of reconciliation eliminated, but the statute affirmatively declares that no other or different provision, agreement, condition, or clause shall in any manner be made a part of such contract or policy.

The fundamental principle of statutory construction is to determine the intent of the Legislature. There is no ambiguity or gap in the new statute which indicates or requires us to resort to any of the traditional rules of statutory construction in order to ascertain the intent of the Legislature. The new statute says what it means and means what it says, and that declaration is that no other or different provision, agreement, condition, or

clause shall in any manner be made a part of such contract or policy.

We observe that the Legislature, when enacting the 1951 amendment, is presumed to have known the pre-existing law. In enacting this later amendatory statute there could be no other conclusion but that the language was intentionally changed for the purpose of effecting a change in the law itself. Familiar rules on statutory construction also strongly support this conclusion. See, Hills v. Burnett, 172 Neb. 370, 109 N. W. 2d 739; Hurley v. Brotherhood of R. R. Trainmen, 147 Neb. 781, 25 N. W. 2d 29; Chilen v. Commercial Casualty Ins. Co., 135 Neb. 619, 283 N. W. 366.

We therefore come to the conclusion that section 44-501, R. R. S. 1943, as amended in 1951, and now the present existing statute, controls the conflict between these statutes and that the defendant's recovery is limited by the provisions of the policy as written in conformity with the 1943 Standard Fire Insurance Policy of New York.

This is a declaratory judgment action to determine which provision of the statute prevails. No issue is presented to us, therefore, as to the resolution of the amount of the actual loss of the defendant under the terms of the policy.

The judgment of the district court is, therefore, reversed and the cause remanded with directions to enter a judgment in conformity with the conclusion reached herein.

REVERSED AND REMANDED WITH DIRECTIONS.

NEWTON, J., dissenting.

I respectfully disagree with the majority opinion. Under that opinion an insurance company may deliberately and knowingly overinsure a property against loss by fire. It may, over a period of years, collect premiums on the basis of the inflated value and then, when a loss occurs, contend that the actual value of the property was less than its insured value and pay

only the actual value. It would seem that if this is to be accepted as the law, equity would require the insurer to at least refund, with interest, all excess premiums collected.

The opinion is based on the theory that Laws 1951, c. 139, § 1, p. 572, repealed by implication section 44-380, R. R. S. 1943. This court stated in Steeves v. Nispel, 132 Neb. 597, 273 N. W. 50: " 'Repeals by implication are not favored, and a construction of a statute which, in effect, repeals another statute will not be adopted, unless such construction is made necessary by the evident intent of the legislature.' "

In Bass v. County of Saline, 171 Neb. 538, 106 N. W. 2d 860, we stated: "Where general and special provisions of statutes are in conflict, the general law yields to the special, without regard to priority of dates in enacting the same, and a special law will not be repealed by general provisions unless by express words or necessary implication." In that case it is further stated that: "Statutes pertaining to the same subject matter should be construed together. Such statutes, being pari materia, must be construed as if they were one law and effect given to every provision."

To the same effect is State ex rel. Retchless v. Cook, 181 Neb. 863, 152 N. W. 2d 23, wherein it is stated: "All statutes relating to the same subject should be construed and considered together for the purpose of giving effect to the legislative intention. All statutes in pari materia must be considered together and construed as if they were one law, and, if possible, effect given to each provision."

"In construing a statute, the court must look to the object to be accomplished, the evils and mischief sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it."

As pointed out in the majority opinion, section 44-

501, R. R. S., 1943, prior to 1951, stated that the New York standard form of policy should be followed "as nearly as practicable." These words were construed by this court as an indication that it was not the legislative intent to render section 44-380, R. R. S. 1943, nugatory. See, Fadanelli v. National Security Fire Ins. Co., 113 Neb. 830, 205 N. W. 642; State ex rel. Martin v. Howard, 96 Neb. 278, 147 N. W. 689.

In State ex rel. Martin v. Howard, *supra,* it is pointed out that the original act required deviation in many respects from the New York standard form. In Fadanelli v. National Security Fire Ins. Co., *supra,* reasons other than the inclusion of the words "as nearly as practicable" were given for construing the valued policy act in conformity with the requirements of section 44-380, R. R. S. 1943. It is therein stated: "The valued policy act was designed to repress an evil practice, and thereby advance public interest and promote public justice by securing for the assured a policy payment, in the event of total loss, of the full amount of indemnity for which he contracted, and for which he paid. In the present instance we have a recurrence of the evil practices above referred to, to wit: The endeavor to secure a settlement by the insurer for less than his contract in terms imposes upon him. This conclusion certainly cannot be gainsaid. It must be admitted that the purpose of the rebuilding clause in the policy in question, and its only purpose, was and is that it might enable the defendant company, in case of a total loss, to discharge its liability on the policy by an expenditure of a less sum of money than would be required to pay the amount of insurance named in the policy. In no other way could the company derive any benefit from that clause. If the expense of rebuilding would exceed or even equal the amount of the insurance mentioned, there could be neither advantage nor object on the part of the company to undergo that trouble, and when the expense is less the performance of that condition by

rebuilding the destroyed property would be but a mode of satisfying the obligations of the company by payment to persons other than the assured of a sum less than became payable on the policy according to the provisions of the statute. Thus, the evident purpose by this method is to accomplish by indirection the effect of a transaction expressly prohibited by the ordinary construction of the terms of the section of the statute involved."

There never has been a direct attempt to repeal section 44-380, R. R. S. 1943. The section has been consistently enforced by the decisions of this court. Certainly the existence of these court decisions and of the statute were within the knowledge of the legislators, yet the statute was not repealed. The implication is that it was the legislative intent to leave it in full force and effect. Section 44-501, R. R. S. 1943, is a general statute dealing with the New York standard form whereas section 44-380, R. R. S. 1943, is a special statute enforcing the insurance contract according to the amount of insurance stipulated and paid for. Under the rules of statutory construction, the special statute prevails over the general statute. The two must be construed together and effect given to both. Repeals by implication are not favored. Particularly is this true when a long-settled and well-recognized legal doctrine is at issue and there has been no attempt to repeal the statute in controversy.

As pointed out in Fadanelli v. National Security Fire Ins. Co., *supra,* there are good reasons for sustaining section 44-380, R. R. S. 1943. To hold otherwise is tantamount to sanctioning a legal fraud. It promotes a situation whereby, as hereinbefore pointed out, fire insurance companies may knowingly sell excess insurance policies, collect premiums on the excess insurance, and then in the event of a loss pay off for a lesser amount. Certainly, such was not contemplated by the Nebraska Legislature.

SPENCER, J., joins in this dissent.

CLINTON, J., concurring.

I concur in the opinion of White, C. J. In so doing I call attention to the provisions of sections 44-601, 44-602, and 44-603, R. R. S. 1943, which make it unlawful for any insurance company or agent to issue, or any person having an interest in property to procure a fire insurance policy in excess respectively of the fair value of the property, or the value of the insured's interest in the property. While these statutes refer only to the hazard of fire and may be intended primarily to discourage arson they are, since the other hazards to be insured against are normally included in the same policy and therefore the same stated value must apply to all hazards, indicative of a general legislative intent to limit indemnity to actual cash value. In this light section 44-380, R. R. S. 1943, is an anomaly.

As a practical matter under the opinion in this case no unfairness can result if both insurer and insured make an appropriate and mutual determination of the actual cash value to be stated in the policy.

McCOWN, J., dissenting.

I concur generally in the dissent. In addition, it should be noted that the two statutes involved here can be reconciled within the general-special classification limits. The provisions of the New York standard policy apply to "*all* direct loss by fire or lightning" to *any* property, real or personal, insured under such policy. The valued policy act provides: "Whenever any policy of insurance shall be written to insure any *real property* in this state against loss by fire, tornado, or lightning, and the property insured shall be *wholly destroyed,* * * * the amount of the insurance written on such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages." § 44-380, R. R. S. 1943. (Emphasis ours.)

The valued policy legislation was enacted many years

before the amendment to the statute requiring the use of the New York standard form without variation. There are no express words indicating an intent to repeal any other statute contained in either of the two statutes. To assume that the Legislature intended to repeal the valued policy act when it enacted the statute dealing with the complete New York fire insurance policy form many years later ignores practical realities as well as traditional rules of statutory interpretation.

The ancient maxim that repeals by implication are not favored "has peculiar force in the case of laws of special and local application, which are never deemed repealed by general legislation except upon the most unequivocal manifestation of intent to that effect." Mancuso v. State, 123 Neb. 204, 242 N. W. 430. There was no such intent here.

SPENCER, J., joins in this dissent.