DELMER ZWEYGARDT, APPELLEE, V. FARMERS MUTUAL
INSURANCE COMPANY OF NEBRASKA, A CORPORATION,
APPELLANT.

241 N. W. 2d 323

Filed April 21, 1976. No. 40257.

Van Steenberg, Brower, Chaloupka & Mullin, for appellant.

Holtorf, Hansen, Kovarik & Nuttleman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Farmers Mutual Insurance Company of Nebraska, hereinafter referred to as "Farmers Mutual" or as "Insurance Company," appeals from a judgment rendered against it in the District Court for Scotts Bluff County in an action brought by the plaintiff, Delmer Zweygardt, on a fire insurance policy issued by Farmers Mutual, to recover the fair and reasonable value of an insured dwelling house completely destroyed by fire. A trial by jury having been waived, the matter was tried to the court, which entered a judgment against the defendant Insurance Company for $5,000 and also awarded the plaintiff an attorney's fee of $500 to be taxed as costs.

Motion for a new trial was overruled, and Farmers Mutual perfected its appeal. We affirm.

The issues in this appeal are the effect of a prior vacancy of the premises upon the liability of Farmers Mutual under its policy, and the sufficiency of the evidence adduced at the trial to sustain the damages awarded by the court.

It appears that sometime prior to the fire in question, the plaintiff, Delmer Zweygardt, a resident of Colorado, purchased 240 acres of land near Mitchell, Nebraska, upon which were located two houses. One of these houses, known as Labor House #2, was the house involved in this action which was destroyed by fire. The 240 acres were "custom farmed" for Zweygardt by one Chuck Meyer, who acted as Zweygardt's agent to obtain insurance on the house, and also to attempt to rent it. Meyer went to the City & Country Insurance Agency in Scottsbluff, with whom he had previously done business, to arrange for the insurance. Robert Hall was the owner of the insurance agency and was an agent of Farmers Mutual. He testified at the trial that Chuck Meyer had come to his office and advised him that his father had sold the farm to Zweygardt and that he was to get insurance on it immediately. Robert Hall was familiar with the farm and improvements, having insured them for Chuck Meyer's father, the previous owner. Hall testified that Meyer at that time told him that the tenant house was vacant. Hall told Meyer that he didn't think the house was in very good shape and that there were a lot of problems in insuring a building. Meyer then told him that that was no problem, and that: "We are in the process of remodeling and we got a tenant lined up." Hall replied: "Fine, when you get it done come in and we will revalue it." Hall put a valuation of $3,000 on the house at that time. The insurance policy in question was issued on April 2, 1971, and insured Labor House #2 for $3,000.

Both Zweygardt and Meyer testified that sometime in

March a young couple planning to be married had agreed to do repair work upon the house in return for a reduction in rent. However, the tentative arrangement fell through after the house was severely vandalized by unknown persons about May 1971, a month or two before the house was destroyed by fire.

On April 27, 1971, approximately 3 weeks after the issuance of the policy, plaintiff Zweygardt personally came to Hall's insurance agency to discuss the revaluation for insurance purposes of some buildings, including Labor House #2. Hall was reluctant to increase the coverage on that house when he learned that it was still vacant. According to Hall, Zweygardt then told him: "No problem. We got it remodeled, we got a tenant lined up. We are in the process." Hall further testified that, relying on the foregoing assurances, he did not execute any forms or permits normally required when Farmers Mutual insures vacant buildings. Zweygardt, however, contradicted Hall's version of what had transpired at that time. According to Zweygardt, there was no discussion about the nature or duration of the vacancy, although he testified that Hall had asked him whether there was anybody living in the house; and that Zweygardt had said, "No, not at this time." He stated there was no further discussion about renting the house then and that Hall stated that he would increase the coverage on the house to $5,000. Hall further testified that the first time they discovered the buildings had never been remodeled and were still vacant was when they received the report of the vandalism, but that he did not go out and check it. He also stated that he had no discussion with either Chuck Meyer or Zweygardt regarding the occupancy of the house after the day in April when they changed the values on the property. He testified: "* * * I just assumed that it was going along according to our original conversation." On July 18, 1971, the house was totally destroyed by fire.

The policy in question has three separate provisions

relative to the issue of vacancy and unoccupancy. The first is the standard provision contained in all New York Standard Fire Insurance Policies, reading as follows: "Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring * * * (b) while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days; * * *." The second appears as one of the general provisions of the reverse side of the broad form endorsement, being section VI C, which reads: "Vacancy and Unoccupancy. Permission is granted to remain vacant for not more than 60 days at any one time or unoccupied for not more than 120 days at any one time, except as respects Perils 5, 6, 7, 15, 16, 17 and 18 as provided in paragraphs C and E of Section II, and except as provided in any endorsement attached to this policy." The third appears on the reverse side of the extended coverage endorsement which is made a part of the policy. It provides: "Construction, Alterations and Repairs: Permission is granted to complete any new building insured under this policy, and to make alterations, additions and repairs to any building insured under this policy, and for such building to be vacant or unoccupied during construction or repairs for not exceeding 90 consecutive days, and the insurance on such building is extended to cover all materials on the premises to be used in the construction or repairs."

There is no dispute in the evidence and both parties agree that the house was vacant when the policy was issued, that it was not subsequently rented, and that it remained vacant until its destruction on July 18, 1971, a period of 107 days.

There is no question that provisions in fire insurance policies, such as those set out above, which void the policy in case the property is vacant and unoccupied are reasonable and valid. However, it is also well settled that such provisions are for the benefit of the insurer

and may be waived by it, or its authorized agent, or the insurer may be estopped to rely upon the condition as a defense to an action upon the policy.

The first issue for our determination is whether under the facts of this case such a waiver by, or estoppel of, the Insurance Company occurred. The weight of authority and prevailing view is that if an insurance company has knowledge through its agent, when a contract of insurance is effected, that the premises are vacant or unoccupied, the issuance of the policy waives any provision as to vacancy or unoccupancy, at lèast so far as the existing vacancy is concerned. See, for example, McKinney v. Providence Washington Ins. Co., 144 W. Va. 559, 109 S. E. 2d 480 (1959), and cases cited therein at pages 564 and 565. See, also, 43 Am. Jur. 2d, Insurance, § 957, p. 906. Nebraska adheres to this rule. Rochester Loan & Banking Co. v. Liberty Ins. Co., 44 Neb. 537, 62 N. W. 877 (1895); German Ins. Co. of Freeport v. Frederick, 57 Neb. 538, 77 N. W. 1106 (1899). In Rochester, the policy provided that it would be void if the policy should "be or become vacant or unoccupied and so remain for ten days." The court noted that the policy was not void but voidable at the election of the insurer. The court found that there was a waiver by the company because the agent knew at the time of the issuance of the policy that the premises were vacant, but issued the policy anyway. Later, in German, the court dealt with the situation in which the insured had told the agent that the premises were vacant, but assured him that a tenant was moving in the next day. The agent, in reliance on this assurance, indicated on the application that a tenant was residing in the premises. The tenant did not move in, and 9 days later the house burned down. The policy denied coverage in the event of any vacancy, without granting any grace period. In that case the court found a waiver, stating that the vacancy provision is for the benefit of the insurer which can waive it, and that the provision is waived if the company issues the policy

with knowledge of an existing vacancy, citing Rochester Loan & Banking Co. v. Liberty Ins. Co., *supra*. The court then stated: "It can hardly be claimed that there was a warranty that the tenant would move in the next day. It was a fact that the insured could not control. His statements, so far as they concerned facts, were true, and the agent saw fit to issue the policy, relying on the probability of early occupancy."

It should also be noted here that Farmers Mutual has not alleged in its pleadings any fraud or misrepresentation on the part of the insured to avoid liability under the policy, although there was evidence from Hall indicating that he issued the policy on the expectation of future occupancy after the completion of repairs. In later Nebraska cases on the subject, the validity of Rochester and German has not been questioned by this court. The reading of the above two cases, especially German, would clearly indicate that promises made by the insured in obtaining insurance with reference to the vacancy of the premises, and particularly the prospects for occupancy, are not a paramount consideration. In fact, in German the statement to the agent of the insurance company was to the effect that the premises were vacant, but had been leased and the tenant would move in the next day.

The facts in this case clearly indicate that Robert Hall, the agent, had knowledge of the vacancy of the premises, not only on the date the policy was issued, April 2, 1971, but also on April 27, 1971, when he increased the coverage of the policy from $3,000 to $5,000, and again in May 1971, when the vandalism occurred. Under the previously cited rule that if an insurance company has knowledge through its agent, when a contract of insurance is effected, that the premises are vacant or unoccupied, the issuance of the policy waives any provision as to the vacancy or unoccupancy, "at least so far as the existing vacancy is concerned," there is little question that the "vacancy" provisions were waived, as

"the existing vacancy" was continued during the entire period from April 2, 1971, when the policy was originally issued, until July 18, 1971, when the premises were destroyed by fire.

Farmers Mutual argues, however, it is necessary that it be shown that it had notice of the vacancy after the expiration of the 60 or 90 days permitted under the "vacancy" provisions of the policy above set out. We do not agree. The rationale of the rule as stated in the Nebraska cases, as well as in cases from other jurisdictions, is that the insurer assumes the risk of insuring vacant premises when issuing a policy on the property, and that when the fire occurs there is no increase in the risk, as the property is no more vacant than it was at the time of contracting. See McKinney v. Providence Washington Ins. Co., *supra.*

We concede that there are a minority of states which adhere to the doctrine urged by Farmers Mutual. Some of these states base their holdings on the subjective intent and knowledge of the parties about the duration of a vacancy; and others distinguish between present and future breaches under vacancy clauses. Farmers Mutual cites cases of both types in its brief in support of its argument. Cases such as Bledsoe v. Farm Bureau Mut. Ins. Co., 341 S. W. 2d 626 (Mo. App., 1960), appear to hold that knowledge of vacancy at the time of issuance is not alone sufficient ground for finding a waiver; but the agent must also be aware that the vacancy deadline will not be met, or that it is unlikely that the premises will be rented. Cases supporting the second branch of the minority rule would appear to hold that a breach on which a waiver might be based would not occur until the expiration of the grace clause period. See England v. Westchester Fire Ins. of N. Y., 81 Wis. 583, 51 N. W. 954 (1892). They hold that the situation at the time of the contract may be irrelevant unless there is knowledge of a permanent vacancy. One such case is Moore v. Niagara Fire Ins. Co., 199 Pa. St. 49, 48 A. 869 (1901).

In that case, the court criticized the Nebraska case, Rochester Loan & Banking Co. v. Liberty Ins. Co., *supra*, and similar cases, for treating the clauses allowing specified periods of vacancy in the same manner as clauses denying coverage for vacancy "at any time." As previously stated, however, cases of the above type represent only a minority of the jurisdictions, and the rule laid down in Rochester has not been overruled or questioned by this court.

In this case, plaintiff did not contract for 60 or 90 day coverage for the tenant house. He contracted for 3 years of insurance coverage and paid premiums for 3 years coverage. The vacancy of the premises was known to the Insurance Company at the time it issued its policy and on other occasions subsequent thereto, and such vacancy was continuous and uninterrupted. There was no change in the condition of the premises so far as vacancy is concerned between April 2, 1971, and the date of the fire which occurred 107 days later; nor was the risk to the company from that source increased during that period. We conclude, therefore, that under the facts of this case Farmers Mutual must be deemed to have waived the provisions of its policy relating to "vacancy" as set out above, and may not assert those provisions as a defense to this action.

We now consider the question of whether the judgment of the court awarding Zweygardt $5,000 damages is supported by evidence in the record, or whether it is based on speculation and conjecture. There is no doubt that Zweygardt's recovery in this case must be limited to the actual value of the property rather than the amount of insurance thereon. Insurance Co. of North America v. County of Hall, 188 Neb. 609, 198 N. W. 2d 490 (1972). The policy was issued and the loss occurred before the Legislature amended section 44-501, R. R. S. 1943, in 1973 reinstating the "valued policy" provisions contained in section 44-380, R. R. S. 1943, in fire insurance cases.

The court heard the testimony of five witnesses on the

issue of valuation. Wallace Stiegelmeyer, the area manager for Travelers Insurance Company's real estate investment department, testified for Zweygardt. He had appraised the house in question for loan collateral purposes on two occasions, once in 1964 and once in 1968. He testified that in 1964 the property had a practical replacement value of $7,500, with a normal depreciated value of $5,000. In 1968 he again appraised the property for his company and came to the same conclusion as to its value, stating that it had a practical replacement value of $7,500, with a depreciated value of $5,000. At that time he stated also that the increase in replacement costs balance the loss of value due to depreciation. His personal knowledge as to some aspects relating to the condition of the property were challenged on cross-examination, but the court ruled that his testimony was admissible with the objections raised only going to its credibility.

Robert Hall, the insurance agent, testified on direct examination that $5,000 looked like an adequate estimate of value, but that vacancy was definitely a factor in insurance appraisals. On recross-examination he was asked: "Q. Mr. Hall, would you agree with the valuation placed on that house by Mr. Stiegelmeyer's as being — now not taking into consideration the fact that the house is vacant — as being a fair market value of that house at the time you issued the insurance? A. Yes." Zweygardt, the owner, testified as to the value of his house, stating: "Well, in my estimation, a ball park figure, it would be worth approximately $10,000 minus a few of these repairs that were required inside." In answer to a question of what type of repairs were needed he replied that some of the walls needed a paneling covering and a few things like that, but there were no big major expenses. He testified that there were some holes in the inside walls but that the house was in generally good condition. On cross-examination, he was unable to recall if there was plumbing, running

water, or a hole burned in the livingroom floor. No specific evidence was given as to the cost of the necessary repairs. Farmers Mutual offered an exhibit, being a copy of a rural property card, into evidence showing an appraisal of $1,315 on the property, although counsel for Farmers Mutual stated this was not a tax appraisal and that it indicated the county assessor's actual valuation of the property. However, since Farmers Mutual offered no foundational testimony as to the method of preparation or purpose of the appraisal, we do not feel the evidence offered is persuasive or has much probative value. Finally, the deposition of James Costello, a former sergeant of detectives for Scotts Bluff County, was admitted into evidence for Farmers Mutual. He had investigated a vandalism report on the property in May 1971, and again in June 1971. He testified that the house was generally dirty, the wallpaper was torn, one wall was kicked in, and the picture window was broken. He valued the property at between $500 and $1,000.

The rule in insurance cases, as in other cases involving damage to property, is that the evidence must be such that damages can be determined with reasonable certainty. The judgment cannot be based on speculation or conjecture. Sherman v. Travelers Ind. Co., 193 Neb. 104, 225 N. W. 2d 547 (1975). In its argument Farmers Mutual concentrates on the testimony of the owner, Zweygardt, that the property was worth in the neighborhood of $10,000 less the cost of inside repairs which would not be major. The Insurance Company claims that since there was no evidence adduced as to the cost of repairs, the judgment of the court must have been based upon speculation and conjecture. We do not agree. As outlined above, there was other competent evidence which the court could, and undoubtedly did, consider in determining the amount of damages. The value, as testified to, ranged from $500 to approximately $10,000. Robert Hall, the agent for Farmers Mutual, testified that he agreed with the valuations placed on the property by the

witness, Stiegelmeyer, as of the date he issued the policy. Stiegelmeyer had testified that in 1964 and 1968 the house had a value of $5,000 for loan purposes, and the replacement cost of the house was $7,500. The court, sitting as a jury, was entitled to believe any credible evidence before it, notwithstanding the existence of conflicts in the evidence. The rule is that the findings of a court in a law action in which a jury is waived have the effect of the verdict of a jury and will not be disturbed on appeal unless clearly wrong. Siefford v. Housing Authority, 192 Neb. 643, 223 N. W. 2d 816 (1974); State Farm Fire & Cas. Co. v. Muth, 190 Neb. 248, 207 N. W. 2d 364 (1973). We are unable to say that the trial court was clearly wrong and therefore affirm its decision.

AFFIRMED.